Lewis W. NORTON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 09A02–0205–CR–370.

Court of Appeals of Indiana.

March 26, 2003.

James T. Knight, Logansport, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa–Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Lewis W. Norton appeals his two convictions of child molesting[1] as Class C felonies, presenting the following issues for our review:

---

1. *See* IC 35–42–4–3.

I. Whether the trial court erred by not declaring a mistrial during jury selection where a potential juror disclosed that her employment in a correctional facility might place her in an awkward position should she be selected to serve on the jury.

II. Whether the trial court erred by excluding the testimony of a defense witness whose testimony was intended to impeach the reputation for truthfulness of his brother, a State witness, based upon the State's witness's reputation for truthfulness within their family.

We affirm.

### FACTS AND PROCEDURAL HISTORY

The facts most favorable to the judgment show that in March 1999, twelve-year-old D.U. was friends with two sisters, T.C. and J.C., who lived in a trailer at a campground in Cass County with their mother and Norton. While D.U. was visiting with her friends, Norton attempted to "French kiss" D.U., touched her upper thigh and vagina, tried to entice D.U. to lie on the bed with him, and invited her to go into the woods with him. During the same time period, Norton touched eleven-year-old T.C.'s chest and vagina. Both girls told Jody Thompson, a friend of Norton's, about the incidents, and the police were notified. Norton was arrested, charged, and convicted of two counts of child molesting. He now appeals.

### DISCUSSION AND DECISION

Norton first contends that the trial court erred by not granting his motion for a mistrial following jury selection because a potential juror's comments so tainted the jury as to place him in grave peril. We disagree.

A mistrial is an extreme remedy warranted when no other curative measure will rectify the situation. *Szpyrka v. State*, 550 N.E.2d 316, 318 (Ind.1990). The grant or denial of a mistrial is within the sound discretion of the trial court, and we will not reverse a trial court's ruling absent an abuse of that discretion. *Jackson v. State*, 518 N.E.2d 787, 789 (Ind.1988). Thus, we will review the trial court's decision with great deference, as that court is in the best position to assess the circumstances surrounding the event and the probable impact of the alleged error on the jury. *Kavanaugh v. State*, 695 N.E.2d 629, 632 (Ind.Ct.App.1998). To prevail on appeal, Norton must demonstrate that the conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Kelley v. State*, 555 N.E.2d 140, 141 (Ind.1990). To determine the gravity of peril, an appellate court considers the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. *Id.* Generally, a timely and accurate admonition is an adequate curative measure for any prejudice that results. *Schlomer v. State*, 580 N.E.2d at 950, 956 (Ind.1991).

Here, during jury selection the following colloquy took place between the State and a prospective juror:

[STATE]: Can everybody be a fair juror in this case? Ma'am can you?

\* \* \*

RESPONSE: I mean, the only problem I have is I work at a correctional facility, you know, and if I sit on a jury trial and this guy is out there and I'm out there working, I mean—

[STATE]: Right.

RESPONSE: it's going to be kind of awkward for me to—

[STATE]: Tell me this, does it—

RESPONSE: I mean, I treat everybody the same out there anyway so it doesn't really matter but it's kind of a weird situation.

[STATE]: Yeah. Is it something that since you work in a correctional facility and you know there's a possibility of, with a felony there's a possibility of imprisonment, tell me this, would it upset you so bad and, or would you be thinking about it so much, back to the eventually [sic] or possibilities in the future, that you wouldn't be able to concentrate, that you wouldn't be able to be fair to the witnesses or to the case?

RESPONSE: Not really.

[STATE]: Or to both parties in the case?

RESPONSE: (Inaudible).

[STATE]: Okay. So you can't—

RESPONSE: Well, if I have a good officer by me when I work (inaudible).

[STATE]: Okay. All right. But you, you think you can be fair in this case?

RESPONSE: Yes.

*Appellant's Appendix* at 119–20.

■ Following the conversation, Norton moved for a mistrial arguing to the trial court that the implication he may be housed at the correctional facility where the potential juror worked as a nurse placed him in a position of grave peril. Defense counsel maintained:

> And in this situation we now have individuals who otherwise were able to [fairly and impartially hear the evidence] who have been exposed to comments, which to be frank, place this defendant in such a poor light which speak to the possibility of incarceration and then the actions of a potential juror should this

person be incarcerated. The subject of incarceration is not one for voir dire. *Transcript* at 70–71. Defense counsel disagreed with the State's suggestion that an admonishment could correct the situation given that the potential jurors knew this was a felony case and could be expected to recognize that a conviction could result in imprisonment. In response, the trial court denied the motion for mistrial, excused the potential juror for cause, and informed the parties that its final instructions contained an instruction informing the jury that any penalty in the case was not their concern as they were not responsible for determining punishment. Later, when defense counsel renewed his objection, the trial court again denied the mistrial and noted that admonishing the jury would bring more attention to the situation than necessary. Norton at no time requested an admonishment be given to the jury.

We hold that the trial court did not abuse its discretion by not declaring a mistrial under the circumstances. Any prejudice that existed because of the State's questioning of the potential juror was cured by excusing her from service. Given that the potential jurors knew they were deciding a felony case where Norton could face imprisonment if convicted, the conversation between the State and the potential juror did not subject him to grave peril. The potential for imprisonment could hardly have been a surprise. The probable effect upon the jury was minimal. The trial court acted within its discretion in making its decision, and we are unable to conclude that Norton was placed in a position of grave peril that would have justified a mistrial.

Norton also argues on appeal that the trial court "elected not to even issue an admonition." *Appellant's Brief* at 7. This argument, however, overlooks the fact that trial counsel insisted that an admonition

would not cure any possible prejudice. Further, the trial court acted within its discretion in not admonishing the jury to disregard the statements of the potential juror because an admonishment would simply draw more attention to the incident. The trial court properly refrained from repeating the alleged error's substance and further cured any problem by providing a final instruction to the jury that the potential punishment was not its concern during deliberations. Accordingly, the trial court correctly denied the motion for a mistrial.

Norton next asserts that the trial court erred by not allowing impeachment witness Jessie Thompson to testify concerning the veracity of his brother, State's witness Jody Thompson. At trial, Jody testified that the two victims separately told him that something had happened to them while they were with Norton. He also testified that Norton himself told him that he laid on the bed with D.U. and touched her stomach and rubbed her thigh. During the defense's offer to prove, Jessie testified that he was Jody's brother and had discussed Jody's reputation for truthfulness "within the community of [his] family." *Transcript* at 193. Jessie specifically stated that "Jody's reputation is usually he would rather lie to you as to tell you the truth." *Transcript* at 193. He based his opinion on his personal experience and upon what other family members had said. The State objected, indicating that it did not believe reputation evidence for purposes of impeachment could be based upon the community of a "family." Exercising its evidentiary discretion, the trial court disallowed Jessie's testimony.

The evidentiary rulings of a trial court are afforded great deference and are reversed on appeal only upon a showing of an abuse of discretion. *Herrera v. State,* 710 N.E.2d 931, 935 (Ind.Ct.App.1999).

On appeal from such rulings, we reverse only when a manifest abuse of discretion denies the defendant a fair trial. *Price v. State,* 765 N.E.2d 1245, 1248 (Ind.2002).

Ind. Evidence Rule 608(a) allows, under limited circumstances, the credibility of a witness to be attacked by opinion or reputation evidence. The Rule provides:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Evid. R. 608(a). Like most jurisdictions, Indiana requires that an impeaching witness speak only about the impeachee's reputation within the "community" at the time of the impeachee's testimony or within a reasonable time prior to trial. 13 ROBERT LOWELL MILLER, JR., INDIANA EVIDENCE § 608.103 (2d ed.1995).

Professor McCormick opined the following with respect to the community of residence:

> As to place of reputation, the traditional inquiry is as to general reputation for veracity "in the community where he lives." The object of this limitation of place is obviously to restrict evidence of repute, to reputation among the people who know him best. The limitation was appropriate for the situation in England (and less so in America) before the Industrial Revolution, when most people lived either in small towns or in rural villages. But as an exclusive limitation it would not be appropriate in this country today, where a person may be little known in the suburb or city neighborhood where he lives, but well known in another locality where he spends his

workdays or in several localities where he does business from time to time. Thus, today it is generally agreed that proof may be made not only of the reputation of the witness where he lives, but also of his repute, as long as it is "general" and established, in any *substantial community of people* among whom he is well known, such as the group with whom he works, does business or goes to school. These standards should apply under Federal Rule of Evidence 608(a). The trial judge has a reasonable need of discretion to determine whether the reputation sought to be proved among the group in question meets these standards.

CHARLES T. MCCORMICK, MCCORMICK ON EVIDENCE § 43 (4th ed.1992) (emphasis added). The issue of the reliability of the impeaching witness's testimony in a community that is not sufficiently sizable has also been addressed. It is manifest that:

> where the subject matter is one in which all or many of the members of the community have an opportunity of acquiring information and have also an interest or motive to obtain such knowledge, there is likely to be such a constant, active, and intelligent discussion and comparison that the resulting opinion, if a definite opinion does result, is likely to be fairly trustworthy.

5 JOHN J. WIGMORE, WIGMORE ON EVIDENCE § 1610 (Chadbourne rev.1974).

The nature of the communities from which admissible reputation evidence may be drawn has received little discussion in Indiana case law, and the specific issue of "family" as a community has received no treatment. In *Johnson v. State*, 419 N.E.2d 232, 236–38 (Ind.Ct.App.1981), we allowed impeachment of a defendant based upon evidence of her general reputation for truthfulness within the school she attended. More recently, in *Dynes v.*

*Dynes*, 637 N.E.2d 1321, 1323 (Ind.Ct.App. 1994), *trans. denied*, we held that evidence of a mother's reputation for truthfulness at her workplace was admissible in a child custody case.

In *Dynes*, we noted that the modern trend is to allow evidence of the witness's reputation in the workplace. *Id.* (citing 5 WIGMORE ON EVIDENCE § 1616). We concluded that:

> [E]vidence of reputation for veracity should not necessarily be limited to that within the person's community of residence, but should include any community or society in which he or she has a well-known or established reputation. *That reputation must be a general reputation, held by an identifiable group of people who have an adequate basis upon which to form an opinion*, and the witness testifying to reputation must have sufficient contact with that community or society to qualify as knowledgeable of the general reputation of the person whose character is attacked or supported.

*Id.* (emphasis added).

Other jurisdictions have specifically addressed the issue of size of a community. Most notably in Maine, the general rule emerged that a community composed of only a few individuals likely is not sufficiently large to insure that its judgment about the defendant's reputation for truthfulness is reliable. *State v. Doherty*, 437 A.2d 876, 878–79 (Me.1981). The guarantee that the impeaching witness's opinion of the impeachee's reputation is reliable should be based upon being a member of a community of significant size. *Id.* at 879.

The Maine Supreme Court noted that courts in other jurisdictions have recognized size of the community as a safeguard of reliability and have formulated criterion for the admissibility of such evidence. *Id.*

(citing *State v. Bouton,* 50 N.Y.2d 130, 140, 428 N.Y.S.2d 218, 223, 405 N.E.2d 699, 704 (1980) (requiring that the evidence "demonstrate a reputation rather than merely 'individual and independent dealings'"); *State v. Denny,* 294 N.C. 294, 295, 240 S.E.2d 437, 439 (1978) (requiring the reputation to be "held by an appreciable group of people"); *State v. Buckner,* 214 N.W.2d 164, 169 (Iowa 1974) (stating that "(t)he requirement that reputation testimony be based on comments from a cross-section of a community as opposed to a narrow group or class is intended to assure the reliability of the opinion."); *United States v. Perry,* 643 F.2d 38, 52 (2d Cir.1981) (upholding the exclusion of "reputation" evidence derived from the witness' conversations with several of the defendant's co-workers, the minister of the defendant's church, and a laundry proprietor, because the witness was ruled neither familiar with the defendant's reputation nor competent to "speak for the community"); *Caldwell v. State,* 276 Md. 612, 615, 349 A.2d 623, 627 (1976) (holding that, to be admissible, a rape complainant's reputation for chastity must be held "among any substantial community of persons")).

The court, in the Maine case of *State v. Ricker,* 770 A.2d 1021 (Me.2001), specifically addressed the question of "family" as a community. There, Ricker was charged with sexually abusing his young niece and sought to admit impeachment testimony from members of the child's family that the niece had a reputation for untruthfulness among the family. The Maine supreme court held that the trial court did not abuse its discretion by concluding that the requisite foundation for community had not been shown. *Id.* at 1024. The court emphasized that the burden was on the defendant as the proponent of reputation evidence to satisfy the foundational requirements including the requirement that the community be sufficiently large

and diverse to give the reputation evidence the reliability required for admissibility. *Id.* In its analysis, the court noted:

> To be admissible, the evidence concerning a witness' reputation for truthfulness "must embody the collective judgment of the community and be derived from a group whose size constitutes an indicium of inherent reliability." *State v. Mazerolle,* 614 A.2d 68, 73 (Me. 1992) (quotation marks and citations omitted). Evidence of reputation is considered reliable only if the community holding the opinion of reputation is sufficiently large. *Id.* If the group is too insular, its opinion of the witness' reputation for truthfulness may not be reliable because it may have been formed with the same set of biases. *State v. Cyr,* 767 A.2d 307, 310 (Me.2001).
>
> While it may be that a child's community is smaller than an adult's community, the child's community must be sufficiently numerous for the opinion of reputation to be reliable, and the members of that community must have had sufficient contacts with the child to justify an opinion of reputation. Here, the only evidence consists of a reputation for untruthfulness among family members. The father's testimony about the opinions of a teacher and a crisis center worker must be discounted because the testimony was not about the niece's *reputation,* but consisted of the statements of these two people about specific occasions when the niece had not been truthful. Thus, the only evidence of the *reputation* of the niece is her reputation among certain members of the father's family.

*Id.*

■ Turning to the case before us on appeal, we are asked to determine whether a "family" is large enough to constitute a

community for purposes of Evid. R. 608(a). We note that the nature of the community for purposes of 608(a) is not limited to the community at large. Some groups may be sufficiently large to provide the requisite reliability, while others may not. There may be cases where the community of one's family is deemed to be of sufficient size to provide the requisite reliability for an impeaching witness's testimony. However, we are not the proper arbiter of such decisions in the first instance. Trial courts are in a far better position to decide whether the foundational requirements for the admissibility of impeachment evidence have been met given the discretion they possess concerning evidentiary matters, the gatekeeping role they serve, and their unique ability to judge the credibility of the witnesses.

Given our deferential standard of review, we cannot say that the trial court erred in disallowing the impeachment testimony. There was no evidence presented as to the size of the Thompson family. Further, the trial court was in a better position to observe the character and demeanor of Jessie Thompson as an impeachment witness and to make the ultimate decision concerning reliability of the testimony. The trial court did not abuse its discretion in deciding that this family group did not amount to a substantial community of persons for purposes of Evid. R. 608(a).

Affirmed.

SULLIVAN, J., and SHARPNACK, J., concur.