**Alexander ORTA, Appellant/Defendant,**

**v.**

**STATE of Indiana, Appellee/Plaintiff.**

No. 71A05–1004–CR–210.

Court of Appeals of Indiana.

Jan. 14, 2011.

Transfer Denied March 9, 2011.

Peter L. Boyles, Rhame & Elwood, Portage, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant/Defendant Alexander Orta appeals following his convictions for Murder, a felony,[1] Operating a Vehicle with a Controlled Substance in the Blood, a Class A misdemeanor,[2] and Failure to Stop at the Scene of an Accident Resulting in Death of Another Person, a Class C felony.[3] Specifically, Orta raises numerous issues which we restate as: (1) whether the trial court abused its discretion in denying Orta's motion for a mistrial; (2) whether the trial court abused its discretion in limiting the scope of the cross-examination of a certain witness at trial; (3) whether the trial court abused its discretion in instructing the jury that voluntary intoxication is not a defense to the charged offenses; (4) whether the trial court properly alleviated any potential double jeopardy concerns by reducing Orta's Class B felony operating with a controlled substance in the blood causing death instead of vacating his murder conviction; (5) whether the trial court

---

1. Ind.Code § 35–42–1–1(1) (2008).

2. Ind.Code § 9–30–5–2 (2008).

3. Ind.Code § 9–26–1–8 (2008).

properly applied the Indiana Supreme Court's opinion in *Sanchez v. State*, 749 N.E.2d 509 (Ind.2001); and (6) whether Orta's sentence is inappropriate. Concluding that the trial court acted within its discretion with regard to each of Orta's alleged errors, that the trial court properly applied the Indiana Supreme Court's opinion in *Sanchez*, and that Orta's sentence is not inappropriate, we affirm.

## FACTS AND PROCEDURAL HISTORY

At approximately 3:15 on the afternoon of November 1, 2008, Craig Toner and his brother Douglas were riding their motorcycles northbound on Ironwood Drive in South Bend. As Toner and Douglas were continuing northbound along Ironwood Drive, Orta, who was southbound in a silver Honda Pilot, crossed the center line almost entirely into the northbound lane and collided with Toner. As a result of the collision, Toner was thrown against the hood and windshield of Orta's vehicle before rolling to the ground.

Following the collision, Orta stopped his vehicle, walked around to the front of the vehicle, and looked at Toner, who was lying on the ground a few feet in front of his vehicle. Toner, who "really didn't look too bad" and appeared to be more "shaken up" than injured, had some cuts and abrasions on his head. Tr. pp. 349, 351. Toner was alert and conscious and told witnesses that he was "okay" as he tried to push himself into a seated position. Tr. p. 255. Douglas believed that Orta looked as if he was going to flee, so Douglas told him, "[H]ey, buddy, you're not going anywhere," and, "[Y]ou've just hit a police officer." Tr. pp. 252, 267.

Orta then re-entered his vehicle, shut the door, put the vehicle in drive, and accelerated forward, driving directly over Toner's body. Orta continued southbound on Ironwood Drive for several blocks before losing control of his vehicle and crashing into a fence. When a responding paramedic arrived on the scene, Orta was conscious and alert but appeared to be intoxicated. Orta told the responding paramedic that he left the scene of the accident because he was scared.

Toner appeared to have far more serious injuries after being run over than were present following the first collision. He was lying face down, appeared to be unconscious, appeared to have difficulty breathing, was bleeding from a deep wound to the head as well as wounds to the nose and mouth, and had obvious limb fractures. Responding paramedics initially believed that Toner was dead. Toner was transported to the hospital where he died.

An autopsy revealed that the cause of Toner's death was multiple blunt force injuries, the most lethal being to the chest. Toner suffered (1) multiple lacerations and abrasions to his face, scalp, and head; (2) an abrasion across his back; (3) complete fractures of both his upper right and upper left arms; (4) a fracture of his left femur; (5) a fracture of his right ankle; (6) multiple skull fractures; (7) forty separate rib fractures; (8) a fractured vertebra in his back; (9) a dislocated left clavicle; (10) an extensive pelvic fracture; (11) bruising to both lungs; (12) a laceration to his left lung; (13) injuries to his liver; and (14) bleeding in the brain, chest cavity, and abdominal cavity. At trial, a forensic pathologist called to testify by the State opined that a person suffering from the complete fractures of both his upper right and upper left arms would not have been able to push himself up, and a person with forty separate rib fractures would find it very difficult to breathe, much less talk.

On November 2, 2008, the State charged Orta with murder, Class B felony operat-

ing a vehicle with a controlled substance in the blood resulting in death, and Class C felony failure to stop at the scene of an accident resulting in death. A jury trial was conducted on October 6–8, 2009, at the end of which the jury found Orta guilty as charged. On March 4, 1010, the trial court reduced Orta's Class B felony operating with a controlled substance in blood causing death conviction to the lesser-included Class A misdemeanor operating a vehicle with a controlled substance in the blood. Following a sentencing hearing, the trial court imposed an aggregate sixty-five-year sentence. This appeal follows.

## DISCUSSION AND DECISION

### I. Whether the Trial Court Abused its Discretion in Denying Orta's Motion for a Mistrial

 Orta contends that the trial court abused its discretion in denying his motion for a mistrial on the morning of the second day of trial because the entire jury was aware that a family member of Juror Number 7 ("Juror No. 7"), who was subsequently dismissed from the jury, was injured in an accident involving an alleged drunk driver on the previous evening. Appellant's Br. pp. 10–13.

> A mistrial is an extreme remedy warranted when no other curative measure will rectify the situation. The grant or denial of a mistrial is within the sound discretion of the trial court, and we will not reverse a trial court's ruling absent an abuse of that discretion. Thus, we will review the trial court's decision with great deference, as that court is in the best position to assess the circumstances surrounding the event and the probable impact of the alleged error on the jury.

*Norton v. State*, 785 N.E.2d 625, 627 (Ind. Ct.App.2003) (citations omitted). To prevail on appeal, Orta must demonstrate that he was placed in a position of grave peril to which he should not have been subjected. *Id.* To determine the gravity of peril, an appellate court considers the probable persuasive effect of the misconduct on the jury's decision. *Id.* Generally, a timely and accurate admonition is an adequate curative measure for any prejudice that results. *Id.*

Here, the record reveals that when Juror No. 7 arrived on the morning of the second day of Orta's trial, she informed the bailiff that she was "pretty tired this morning because [she] had been up late last night because ... [her] brother ... had been hit by an alleged drunk driver" and was "pretty banged up." Tr. p. 189. The trial court ultimately decided to dismiss Juror No. 7 from the jury. Before being dismissed, Juror No. 7 indicated that she had discussed the situation with the other jurors. The trial court then called the remaining jurors, including an alternate to take the place of the now dismissed Juror No. 7, to inquire into whether the events involving her brother would impact the jury's ability to decide Orta's case in a fair and impartial manner. The trial court asked if any of the jurors had heard about the events of the night before, and all of the jurors answered in the affirmative. The trial court then asked the jurors if they believed that the incident would impact their ability to decide the instant case, and admonished the jury as follows:

> So I guess my second question for each one of you to think about is do you feel that because this by chance happened that that's going to have any effect on you focusing on this case? Because you're getting your law here. And anything out there is irrelevant except your common sense.. You brought your common sense with you. You still go, and you keep it, and you'll have it in your deliberations. But anything that

happens out there is irrelevant and not part of this. Right?

Anybody any problem? No problem?

I don't know if you've noticed, but I tend to be a stickler about trying to make sure we follow our rules. It's just the way I am. Okay? Well, then that's fine. So nobody has a problem from that.

Did anybody since the last time I saw you have anything else come up that you inadvertently heard something, saw something, thought something, anything that could be mental static?

Does [sic] any of the thirteen of you for any reason at all have any mental static that would interfere with you deciding this case?

Nobody? Good. There we go. So now here we go. We're ready to go I think. Tr. pp. 195–96. Immediately after the exchange during which each of the jurors indicated that the incident involving Juror No. 7's brother would not impact their ability to decide the instant case, Orta moved for a mistrial. Following a sidebar conference which was conducted out of the hearing of the jury, the trial court denied Orta's request for a mistrial.

We conclude that the trial court did not abuse its discretion by not declaring a mistrial under the circumstances. Any prejudice that Juror No. 7 may have felt toward the defendant because her brother was injured in an accident by an alleged drunk driver on the first night of trial was cured by excusing her from service. *See Norton,* 785 N.E.2d at 628 (providing that any prejudice that may have existed because a potential juror worked as a nurse in a correctional facility and was questioned extensively about her ability to be a fair and impartial juror was cured by excusing her from service). Although the remaining jurors were aware of the incident involving Juror No. 7's brother, each

of the remaining jurors indicated that the incident would not affect his or her ability to serve in the jury for Orta's trial in a fair and impartial manner. In addition, any prejudice that may have existed because the remaining jurors were aware of the incident involving Juror No. 7's brother was presumably cured by the trial court's admonishment to the jury that anything that happens outside the courtroom, including the incident, is irrelevant to the case at hand, and Orta has failed to show otherwise. *Id.* at 627.

## II. Whether the Trial Court Abused its Discretion in Limiting the Scope of the Cross–Examination of a Certain Witness at Trial

■ Orta also contends that the trial court abused its discretion in limiting the scope of the cross-examination of Dr. Wagner because the absence of the desired testimony of Dr. Wagner allegedly limited Orta's ability to present a theory of defense. Specifically, Orta claims that he was unable to present the theory that he could not form the requisite mental state to commit murder because of his level of intoxication.

A trial court has wide discretion to determine the scope of cross-examination, and we will reverse only for a clear abuse of that discretion. The general rule is that cross-examination must lie within the scope of the direct examination. A trial court abuses its discretion in controlling the scope of cross-examination when the restriction relates to a matter which substantially affects the defendant's rights.

*Nasser v. State,* 646 N.E.2d 673, 681 (Ind. Ct.App.1995). Accordingly, Orta must demonstrate how he was prejudiced by the trial judge's actions. *Id.*

■ Indiana Code section 35–41–2–5 (2008) provides that voluntary intoxication

is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense. Like all statutes in derogation of the common law, Indiana Code section 35–41–2–5 is to be strictly construed and, in adopting this statute, the General Assembly has decreed that intoxication, if voluntary, supplies the general requirement of a voluntary act sufficient to place the voluntarily intoxicated offender at risk for the consequences of his actions, "even if it is claimed that the capacity has been obliterated to achieve the otherwise requisite mental state for a specific crime." *Sanchez v. State*, 749 N.E.2d 509, 517 (Ind. 2001).

Here, Orta does not claim that his intoxicated state was involuntary. Rather, he argues that he was denied his constitutional right to present a theory of defense to the jury because he was unable to question Dr. Wagner about the effects certain levels of intoxication have on one's ability to form the requisite mental state. Article I, Section 13 of the Indiana Constitution, however, only grants defendants "the right to present evidence in support of those defenses that are recognized by the law of the state." *Id.* at 520–21. Therefore, if the substantive law renders the evidence irrelevant, which is what the statute does to Orta's claim of voluntary intoxication, there is no right under Article I, Section 13 to present it. *Id.* at 521. Accordingly, we conclude that the trial court did not abuse its discretion by not allowing Orta to elicit testimony in support of an impermissible defense.

### III. Whether the Trial Court Abused its Discretion in Instructing the Jury that Voluntary Intoxication is not a Defense

Orta next contends that the trial court abused its discretion in instructing the jury that voluntary intoxication is not a defense to any of the charged offenses. The manner of instructing the jury lies largely within the sound discretion of the trial court, and we review the trial court's decision only for abuse of that discretion. *Cline v. State*, 726 N.E.2d 1249, 1256 (Ind. 2000). In reviewing a challenge to a jury instruction, we consider: (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the instruction is covered by other instructions given by the court. *Id.*

The Indiana Supreme Court has held that in order to preserve a claim that the trial court abused its discretion in instructing the jury for appellate review, a defendant must specify at trial the specific grounds upon which he believes the instruction is improper. *See Scisney v. State*, 701 N.E.2d 847, 849 (Ind.1998) (providing that appellate review of a claim of error in the giving of a jury instruction requires a timely trial objection clearly identifying both the claimed objectionable matter and the grounds for the objection). Failure to make a contemporaneous objection to a jury instruction results in waiver. *Blanchard v. State*, 802 N.E.2d 14, 32 (Ind. Ct.App.2004). Furthermore, a defendant may not argue one ground at trial and then raise a different ground on appeal, and the failure to raise an issue at trial waives the issue for appeal. *Helsley v. State*, 809 N.E.2d 292, 302 (Ind.2004); *Howard v. State*, 818 N.E.2d 469, 477 (Ind. Ct.App.2004), *trans. denied.*

On appeal, Orta claims that the trial court abused its discretion in instructing the jury that voluntary intoxication is not a defense to the charged offenses because there was no evidence presented at trial that suggested that he was voluntarily in-

toxicated.[4] Upon review, the record reveals that the trial court, in relevant part, instructed the jury as follows: "Voluntary Intoxication is not a defense to the Charges of Murder or Failure to Stop at the Scene of an Accident That Resulted in the Death of Another Person." Appellant's App. 47. However, the record further reveals that Orta did not object to this instruction on sufficiency grounds at trial. Instead, Orta only objected on the grounds that the tendered instruction was not a pattern jury instruction. Because Orta raised a ground for challenging the instruction on appeal that was not raised before the trial court, we conclude that Orta has waived this issue for appellate review. *See Helsley*, 809 N.E.2d at 302; *Howard*, 818 N.E.2d at 477.

Waiver notwithstanding, this instruction appears to be a correct statement of Indiana Code section 35–41–2–5. Moreover, there is nothing about this instruction that would have precluded Orta from arguing involuntary intoxication as a defense to the jury had he chose to do so. Orta, however, chose not to argue that his intoxication was involuntary.

## IV. Whether the Trial Court Properly Alleviated Any Potential Double Jeopardy Concerns by Reducing Orta's Class B Felony Operating with a Controlled Substance in the Blood Causing Death Conviction Instead of Vacating the Murder Conviction

█ Orta also contends that the trial court erred in reducing his Class B felony operating a vehicle with a controlled substance in the blood causing death conviction to a Class A misdemeanor operating a vehicle with a controlled substance in the blood, rather than vacating his murder conviction in order to alleviate double jeopardy concerns. It is undisputed that both the United States and Indiana Constitutions provide that no person shall be put in jeopardy twice for the same offense.[5] U.S. Const. amend. V; Ind. Const. art. I, § 14. Therefore, Indiana courts have determined that the prohibitions against double jeopardy prohibit multiple punishments for the same offense. *Dawson v. State*, 612 N.E.2d 580, 584 (Ind.Ct.App.1993).

█ When two convictions are found to contravene double jeopardy principles, a reviewing court may remedy the violation by reducing either conviction to a less serious form of the same offense if doing so will eliminate the violation. *Owens v. State*, 742 N.E.2d 538, 545 (Ind.Ct. App.2001); *Sanders v. State*, 734 N.E.2d 646, 652 (Ind.Ct.App.2000), *trans. denied.* If it will not, one of the convictions must be vacated. *Owens*, 742 N.E.2d at 544–45. In the interest of efficient judicial administration, the trial court need not undertake a full sentencing re-evaluation, but rather the reviewing court will make this determination itself, being mindful of the penal consequences that the trial court found appropriate. *Id.* at 545.

Orta and the State agree that it would have violated the prohibitions against double jeopardy if it had imposed multiple punishments for the same offense, *i.e.,*

---

4. Orta's claim that there was no evidence in the record suggesting that he was voluntarily intoxicated seems disingenuous in light of the evidence demonstrating that, at the time of the incident, Orta's blood alcohol content ("BAC") was .289, well above the legal limit of .08, and that his blood also tested positive for cocaine, a Class II controlled substance.

5. We note that aside from a brief contention, Orta does not attempt to explain how his convictions violate the federal Double Jeopardy Clause. As a result, we will only consider Orta's double jeopardy to the extent that it relates to Article I, Section 14 of the Indiana Constitution.

causing Toner's death. However, the State argues that the trial court alleviated any double jeopardy concerns because it did not impose multiple punishments for the same offense, but rather reduced Orta's Class B felony operating a vehicle with a controlled substance in the blood causing death conviction to the lesser included Class A misdemeanor operating a vehicle with a controlled substance in the blood conviction, which only required that the State prove that Orta operated a vehicle while having cocaine in his blood stream. *See* Ind.Code § 9–30–5–2. We agree.

Here, the evidence established that Orta operated his vehicle with cocaine in his blood prior to the act which resulted in Toner's death. Therefore, that crime was complete even before the initial collision and relied on none of the evidence supporting Orta's murder conviction.[6] Accordingly, we conclude that the trial court properly alleviated double jeopardy concerns by reducing Orta's Class B felony operating a vehicle with a controlled substance in the blood causing death conviction to the lesser included Class A misdemeanor operating a vehicle with a controlled substance in the blood conviction.

## V. Whether the Trial Court Properly Applied *Sanchez*

In addition, Orta claims that the trial court erred in applying *Sanchez*. Orta claims that the trial court erred because the trial court denied him the ability to present the defense of voluntary intoxication. Specifically, Orta claims that the trial court erred when it informed him that, while he was free to testify about his level of intoxication if he chose to, he would not be entitled to a reckless homicide instruction if he testified that he was too intoxicated to know what he was doing and was too drunk to "knowingly" or "intentionally" act because pursuant to the Indiana Supreme Court's opinion in *Sanchez*, voluntary intoxication supplies the general requirement of a general act, and as a result, eliminates the requirement that Orta acted "knowingly" or "intentionally." *See Sanchez*, 749 N.E.2d at 517.

Again, Indiana Code section 35–41–2–5 provides that voluntary intoxication is not a defense in a prosecution for an offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense. The Indiana Supreme Court has held that "[t]he Indiana intoxication statute eliminates the requirement that the voluntarily intoxicated defendant acted 'knowingly' or 'intentionally' as to those crimes that include those elements." *Sanchez*, 749 N.E.2d at 517. The *Sanchez* court observed that the General Assembly has decreed "that the intoxication, if voluntary, supplies the general requirement of a voluntary act." *Id.* Therefore, voluntary intoxication is sufficient to place the voluntarily intoxicated offender at risk for the consequences of his actions, "even if it is claimed that the capacity has been obliterated to achieve the otherwise requisite mental state for a specific crime." *Id.*

Upon review of the Indiana Supreme Court's opinion in *Sanchez*, we conclude that the trial court properly applied the Supreme Court's holding in *Sanchez*. Orta was not denied the opportunity to testify regarding his level of intoxication, but merely was warned that if he did, his voluntary intoxication would not, under Indiana law, be a defense sufficient to mitigate the necessary "knowingly" or "in-

---

**6.** Moreover, the record contains substantial evidence that Toner was not killed by the initial collision, but, rather, by injuries sustained from the second impact that resulted from Orta's act of getting back into his vehicle and accelerating forward over Toner's body.

tentionally" mental state. Furthermore, as was previously noted, Orta did not argue that his intoxication was involuntary. Accordingly, we conclude that the trial court did not err in this regard.

### VI. Whether Orta's Sentence is Appropriate

Orta last claims that his sentence is inappropriate.[7] Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The defendant bears the burden of persuading us that his sentence is inappropriate. *Sanchez v. State*, 891 N.E.2d 174, 176 (Ind.Ct.App.2008).

With respect to the nature of Orta's offenses, the record indicates that Orta decided to drive a vehicle after ingesting cocaine and drinking so much alcohol that his BAC was .289%. After the initial collision, Orta decided to get back in his vehicle and accelerate over Toner's body. Orta's decision to operate a vehicle while under the influence of cocaine and a substantial amount of alcohol combined with his decision to get back in his vehicle following the first collision and accelerate over Toner's body resulted in Toner's death, and we are unconvinced that Orta's alleged remorse and the hardship incarceration would have on Orta's family mitigate the seriousness of Orta's offenses.

With respect to Orta's character, our review reveals that Orta, who was twenty-seven years old at the time the instant incident occurred, has amassed a substantial criminal record that includes numerous juvenile adjudications as well as misdemeanor and felony adult convictions. Orta's previous misdemeanor convictions include convictions for battery, public intoxication, and three separate convictions for resisting law enforcement. His previous felony convictions include theft and resisting law enforcement. Orta has previously been placed on probation but has failed to modify or reform his behavior to conform to the laws of this state. We acknowledge that Orta appears to be remorseful for his actions. However, despite his apparent remorse, Orta has, by the young age of twenty-seven, amassed a substantial criminal record that demonstrates a disregard for the laws of this state. We also note that a number of Orta's prior convictions were for resisting law enforcement, and that Orta was told by a witness at the scene that his victim was a law enforcement officer just before Orta drove his vehicle over the victim. Based on our review of the evidence, we see nothing in Orta's character or in the nature of his offenses that would suggest that his sentence is inappropriate.

The judgment of the trial court is affirmed.

KIRSCH, J., and CRONE, J., concur.

---

7. On appeal, Orta frames this issue as whether his sentence is manifestly unreasonable. However, this is no longer the applicable standard, and the applicable standard was whether his sentence is inappropriate in light of the nature of his offenses and his character. Ind. Appellate Rule 7(B). We will therefore review Orta's claim under the appropriateness standard set forth in Indiana Appellate Rule 7(B).