**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**
Mar 13 2014, 6:52 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**P. STEPHEN MILLER**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ERIC P. BABBS**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| VINCENT J. CASTANEDA, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1310-CR-416 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Frances C. Gull, Judge
Cause No. 02D06-1204-FC-112

**March 13, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Following a jury trial, Vincent J. Castaneda was convicted of class C felony Disarming a Law Enforcement Officer[1] and two counts of class D felony Resisting Law Enforcement.[2] Castaneda now appeals and presents the following restated issues for our review:

1. Did the trial court abuse its discretion in limiting the scope of Castaneda's cross-examination of a witness?

2. Did the State present sufficient evidence to support Castaneda's conviction for disarming a law enforcement officer?

We affirm.

On the evening of March 16, 2012, officers of the Fort Wayne Police Department were looking for Castaneda in connection with a report of a stolen vehicle. Sergeant William Michales and Officers Jason Crowder and Greg Milner went to a house where they believed Castaneda and the vehicle could be located. The officers were standing near the curb in front of the house when Castaneda pulled up in a vehicle matching the description of the reportedly stolen vehicle. Officers Crowder and Milner walked toward the vehicle while Sergeant Michales returned to his police cruiser. Officer Milner ordered Castaneda to turn off the car, but Castaneda pulled away at a high rate of speed. The officers gave chase in their police cruisers as Castaneda circled the block and returned to the house, where he

---

[1] At the time of Castaneda's offense, the offense of disarming a law enforcement officer was codified at Ind. Code Ann. § 35-44-3-3.5 (West, Westlaw current through 2011 1st Reg. Sess.), *repealed by* P.L. 126-2012, § 53 (effective July 1, 2012), *recodified at* I.C. § 35-44-1-3.2 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.). For ease of reference, we will refer to the statute as currently codified.

[2] I.C. § 35-44-3-3 (West, Westlaw current through 2011 1st Reg. Sess.), *repealed by* P.L. 126-2012, § 53, *recodified at* Ind. Code Ann. § 35-44.1-3-1 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.).

jumped out of the vehicle and ran toward the front door.

Despite Sergeant Michales's repeated orders to stop, Castaneda ran into the house, through the living room, and into the kitchen, all with Sergeant Michales still in pursuit. Castaneda disregarded Sergeant Michales's commands for him to get on the floor and resisted Sergeant Michales's attempts to physically restrain him. Officer Crowder then entered the room and saw Castaneda fighting with Sergeant Michales. Sergeant Michales shoved Castaneda away from him and shouted for Officer Crowder to use his taser against Castaneda. Officer Crowder drew his department-issued taser and deployed it toward Castaneda's back. The taser probes struck Castaneda's back and he fell to the ground, but he was only momentarily incapacitated. When Officer Crowder ran forward and crouched down beside Castaneda, Castaneda kicked him in the torso, legs, and wrist. Officer Crowder then attempted to press the taser against Castaneda's leg in order to use the taser's "drive-stun" function to temporarily incapacitate him. *Transcript* at 201. Castaneda grabbed the taser, twisted it around, and used it on Officer Crowder's right forearm, causing severe pain to Officer Crowder. At that point, Officer Crowder drew his handgun and fired two shots at Castaneda, wounding him. Castaneda was subsequently taken into custody.

As a result of these events, Castaneda was charged with class C felony disarming a law enforcement officer and two counts of class D felony resisting arrest. A two-day jury trial commenced on August 27, 2013, and Castaneda was found guilty as charged. Castaneda now appeals.

3

1.

Castaneda argues that the trial court abused its discretion in limiting the scope of his cross-examination of Officer Crowder by excluding any reference to Officer Crowder's medical records.

> A trial court has wide discretion to determine the scope of cross-examination, and we will reverse only for a clear abuse of that discretion. The general rule is that cross-examination must lie within the scope of the direct examination. A trial court abuses its discretion in controlling the scope of cross-examination when the restriction relates to a matter which substantially affects the defendant's rights.

*Orta v. State*, 940 N.E.2d 370, 375 (Ind. Ct. App. 2011) (quoting *Nasser v. State*, 646 N.E.2d 673, 681 (Ind. Ct. App. 1995)), *trans. denied*. Likewise, the decision to admit or exclude evidence lies within the trial court's sound discretion. *Filice v. State*, 886 N.E.2d 24 (Ind. Ct. App. 2008), *trans. denied*. Any error in the admission or exclusion of evidence is disregarded as harmless unless it affects the substantial rights of a party. *Turben v. State*, 726 N.E.2d 1245 (Ind. 2000).

During his cross-examination of Officer Crowder, Castaneda made reference to Officer Crowder's medical records from his trip to the emergency room on the night in question. Specifically, the following exchange occurred:

> Q: You never told the E.R. people that you were tased, did you?
> A: I don't remember if I did or not. I told them my wrist and arm hurt.
> Q: Right, but you never told them that you were tased, did you?
> A: No.
> Q: In fact, it would be in the medical records if you did, wouldn't it?
> A: Probably, yeah.

*Transcript* at 239. At that point, the State objected on the basis that medical records were hearsay and that Castaneda had not called any witnesses to lay a proper foundation for their admission. Castaneda responded that the statements had become "business records of the Fort Wayne Police Department now." *Id*. at 240. The trial court stated that the records were medical records and asked whether he intended to call a witness to lay a foundation for their admission. When Castaneda responded that he did not have any such witness available, the trial court sustained the objection and struck Crowder's reference to medical records from the record.[3]

On appeal, Castaneda argues that Crowder's medical records were admissible on cross-examination for impeachment purposes as a prior inconsistent statement under Ind. Evidence Rule 613. This argument is waived because Castaneda did not raise it at trial. *See Hape v. State*, 903 N.E.2d 977 (Ind. Ct. App. 2009) (noting that a defendant may not raise an argument for the first time on appeal), *trans. denied*. Waiver notwithstanding, we note that Castaneda sought to introduce the medical records in order to undermine the credibility of Officer Crowder's testimony by establishing that Officer Crowder did not tell medical personnel that he had been tased that night. Officer Crowder, however, had already admitted that he had not told medical personnel that he had been tased that night. Thus, Castaneda

---

[3] Castaneda incorrectly asserts that the trial court struck Crowder's statement that he did not tell medical personnel that he had been tased from the record. The transcript plainly reflects that the only testimony stricken from the record was the reference to Crowder's medical records and what they might contain. *See Transcript* at 240 ("I'll sustain the objection . . . and strike the reference to the medical records from the record."). Although the trial court subsequently prevented Castaneda from questioning Officer Crowder further with respect to whether he told medical personnel that he had been burned by the taser, Officer Crowder's admission that he had not reported being tased was still in the record and available for the jury's consideration.

was not prejudiced by the trial court's restriction of his cross-examination in this respect. *See Orta v. State*, 940 N.E.2d 370 (noting that a defendant arguing that the trial court has abused its discretion in limiting the scope of cross-examination must establish that he was prejudiced by the trial court's actions). For the same reasons, to the extent Castaneda argues that the trial court abused its discretion by not admitting Officer Crowder's medical records into evidence, any alleged error was harmless. *See Sylvester v. State*, 698 N.E.2d 1126 (Ind. Ct. App. 1998) (noting that where wrongfully excluded testimony is merely cumulative of other evidence presented, its exclusion is harmless error). Accordingly, Castaneda has not established reversible error.

2.

Next, Castaneda argues that the State presented insufficient evidence to support his conviction for disarming a law enforcement officer. In reviewing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Atteberry v. State*, 911 N.E.2d 601 (Ind. Ct. App. 2009). Instead, we consider only the evidence supporting the conviction and the reasonable inferences to be drawn therefrom. *Id.* If there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt, then the judgment will not be disturbed. *Baumgartner v. State*, 891 N.E.2d 1131 (Ind. Ct. App. 2008).

It is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference may reasonably be drawn from it

6

to support the conviction. *Drane v. State*, 867 N.E.2d 144 (Ind. 2007). Accordingly, the question on appeal is whether the inferences supporting the verdict were reasonable, not whether other, "more reasonable" inferences could have been drawn. *Thompson v. State*, 804 N.E.2d 1146, 1150 (Ind. 2004). Because reaching alternative inferences is the function of the trier of fact, we may not reverse a conviction merely because a different inference might plausibly be drawn from the evidence. *Thompson v. State*, 804 N.E.2d 1146.

To convict Castaneda of disarming a law enforcement officer as a class C felony, the State was required to prove that Castaneda, knowing that Officer Crowder was a law enforcement officer, knowingly or intentionally took or attempted to take from Officer Crowder or his immediate proximity a firearm or weapon that Officer Crowder was authorized to carry, without Officer Crowder's consent, and while Officer Crowder was engaged in the performance of his duties. *See* I.C. § 35-44.1-3-2. Castaneda disputes the sufficiency of the evidence supporting two of these elements. Specifically, he argues that the State presented insufficient evidence to establish that Officer Crowder was authorized to carry the taser or that Castaneda knowingly or intentionally took the taser.

With respect to the former contention, the testimony presented at trial establishes that the taser was issued to Officer Crowder by the Fort Wayne Police Department, and prior to being issued the taser, Officer Crowder successfully completed the Department's required taser training program. Officer Crowder carried the taser in the course of his duties as a police officer for four years, and, following the events of this case, the Department was able to download an electronic record of all the times the taser was deployed while in Officer

7

Crowder's possession. This evidence is plainly sufficient to support an inference that Officer Crowder was authorized by the Fort Wayne Police Department to carry the taser.

With respect to the Castaneda's *mens rea* argument, we note intent is a mental state and, absent an admission by the defendant, the trier of fact must resort to the reasonable inferences drawn from both the direct and circumstantial evidence to determine whether the defendant had the requisite intent to commit the offense in question. *Stokes v. State*, 922 N.E.2d 758 (Ind. Ct. App. 2010), *trans. denied*. A person's conduct is intentional "if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code Ann. § 35-41-2-2 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.). A person's conduct is knowing "if, when he engages in the conduct, he is aware of a high probability that he is doing so." *Id.*

Castaneda argues that his conduct after the deployment of the taser was neither knowing nor intentional. He notes that he was temporarily incapacitated by the initial deployment of the taser and that Officer Crowder then used the drive-stun function against him, the purpose of which is to cause pain in order to obtain compliance. According to Castaneda, "it is unreasonable that to believe that [he] was aware of or acted with an understanding of anything but pain removal." *Appellant's Brief* at 10. Castaneda also argues that his actions after being stunned with the taser were involuntary. *See* I.C. § 35-41-2-1 (West, Westlaw current through 2013 1st Reg. Sess. & 1st Reg. Technical Sess.) (providing that "[a] person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense"); *McClain v. State*, 678 N.E.2d 104, 107 (Ind. 1997)

8

(reasoning that the term "voluntary" means "behavior that is produced by an act of choice and is capable of being controlled by a human being who is in a conscious state of mind" (citation omitted)). In short, Castaneda claims that he did not act with the requisite *mens rea* because his actions were attributable to either involuntary muscle spasms or an uncontrollable impulse to escape pain. We note, however, that Castaneda did not merely try to escape the taser. After the initial deployment of the taser, Castaneda kicked Officer Crowder in the torso, legs, and wrist. When Officer Crowder attempted to use the drive-stun function, Castaneda grabbed the taser from Officer Crowder, twisted it around, and used the drive-stun function against him. Castaneda's assertion that he was unable to control these movements is nothing more than a request to reweigh the evidence. The State presented sufficient evidence to support an inference that Castaneda knowingly or intentionally took the taser from Officer Crowder.

Judgment affirmed.

KIRSCH, J., and BAILEY, J., concur.