## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 04 2017, 8:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kristin A. Mulholland
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darryl Leigh Kilgore, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | October 4, 2017 <br><br> Court of Appeals Case No. <br> 45A04-1704-CR-882 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Salvador Vasquez, Judge <br><br> Trial Court Cause No. <br> 45G01-1501-FB-1 |

**Crone, Judge.**

# Case Summary

Following a jury trial, Darryl Leigh Kilgore, Jr., appeals his conviction for class B felony robbery resulting in bodily injury. He argues that the trial court erred in denying his motion for mistrial following an unprompted remark by his ex-girlfriend. We find no error and therefore affirm.

# Facts and Procedural History

Around 8:30 a.m. on June 27, 2014, octogenarian Kenneth Meier walked from his home to the nearby commuter train station in Hammond, got a newspaper on the platform, and started walking homeward. An African-American male "got behind [him] and put [him] in a bear hug." Tr. Vol. 1 at 24. Meier yelled for help. The man lifted Meier up and pushed him down onto the platform. The man then grabbed Meier's wallet, containing over $100 in cash, out of his left front pants pocket and "took off" down the platform. *Id*. Meier suffered "bad scratch[es]" on his elbow and back during the assault. *Id*. at 25. Meier did not see his assailant's face.

Meier's neighbor, Nancy Roberts, was outside her home preparing for a yard sale with her friend Jean Wells when she heard Meier's cries for help. Roberts ran to the train station and saw a "husky" black male running down the platform stairs. *Id*. at 64. She "looked up at him" and "saw his face and eyes." *Id*. at 44, 72. Roberts moved aside "so he could run down and [she] ran up" the stairs and helped the "banged up" Meier off the ground. *Id*. at 44, 45. Wells, who was approximately 300 to 400 feet away, saw a "husky" black male in

profile as he "[ran] down the stairs of the platform and [took] off running down the street going south." *Id*. at 86, 76. Roberts and Wells provided a description of the man to Northern Indiana Commuter Transportation District ("NICTD") police, who distributed security camera footage of the robbery to local media "to seek[] the public's help and assistance in identifying the suspect." *Id*. at 95.

[4] On June 28, Kilgore's ex-girlfriend, Michelle Cleveland, who had dated him "off and on" for approximately eight months, saw video and a still image from the security footage on television. *Id*. at 126. She called NICTD Police Sergeant Howard Morgan and identified the robbery suspect as Kilgore based on the distinctive markings of name-brand jeans and shoes that she had bought for him, a "gray cut-off shirt he always wore[,]" the way he walked, and the way he carried his left arm due to an injury. *Id*. at 123.

[5] On July 1, Kilgore called NICTD Police Chief Robert Byrd and said that "he wanted to clear his name." *Id*. at 96. Kilgore said that he had been at the Hammond station on June 26 between 2:00 and 3:00 p.m. and that if police "reviewed the security camera videos at the station that he would be easily identifiable because he was wearing a black t-shirt with … large white letters on the shirt that said Arsenal Tech." *Id*. at 97. Sergeant Morgan reviewed the Hammond station camera footage from 1:00 to 4:00 p.m. on June 26 and "did not see anybody wearing that kind of clothing either inside the station" or "on the platform." *Id*. at 164. Sergeant Morgan reported this to Kilgore, who said that "possibly" he had been at the East Chicago station. *Id*. Sergeant Morgan

reviewed the camera footage from that station "and again did not see anybody wearing that type of clothing." *Id.* at 165.

[6] With the assistance of a Hammond police detective, Sergeant Morgan developed an array containing frontal photos of six different men, including Kilgore. The sergeant showed the array to Roberts on July 5 and Wells on July 9. He told them that he

> want[ed] them to look at the series of pictures, if they recognize anybody. The person [police] are looking for may or may not be on there and not to get too caught up on hairstyles in case anything has changed, and … to basically look at facial features, eyes, things like that.

*Id.* at 167. According to Sergeant Morgan, Wells "immediately" identified Kilgore as the person she had seen on June 27, and Roberts also identified Kilgore "as the offender that she saw." *Id.* at 160, 161-62.

[7] The State charged Kilgore with class B felony robbery resulting in bodily injury. At Kilgore's jury trial, the State called Cleveland as a witness and asked her about a phone conversation that she had with Kilgore on June 26. Cleveland replied, "Well, he needed a job and he needed a card from the office in Miller, so he asked if I could come and get him. I stated no, I cannot, because there's drug activity in the home." *Id.* at 115. Kilgore's counsel objected and moved for a mistrial, acknowledging his belief that not "by any stretch of the imagination did the prosecutor prompt this." *Id.* at 116. The trial court denied the motion but admonished the jury as follows:

That last comment by the witness was absolutely unsolicited by the state. It was quite frankly improper. This case has nothing to do with drug usage, drug activity, drug anything whatsoever. That comment should not, and I'm instructing you that it will not enter into your discussions at any regard in further discussion about this case. Whether it's during these breaks where you are allowed to discuss this case at all or during deliberations when you finally receive the case, this comment should not in any regard influence you on any issue involved in this case. It's a robbery case, robbery allegation. It was not evidence, and I am striking that from your consideration. Please keep this in mind as we move forward.

*Id*. at 119-20.

[8] Following this admonition, Cleveland testified that Kilgore called her on June 26. He asked her to pick him up at the Miller train station on June 27 and said that he would give her a call. Cleveland "didn't hear from him" until around 9:30 a.m. on June 27, when he called her "and said he went for a run because he was out of breath." *Id*. at 121. Kilgore "said he had money" and wanted Cleveland to pick him up because he could pay for her gas, but she refused. *Id*. at 125.

[9] The jury found Kilgore guilty as charged, and the trial court sentenced him to eight years executed. This appeal followed.

# Discussion and Decision

[10] Kilgore contends that the trial court erred in denying his motion for mistrial. A mistrial is an extreme remedy that is justified only when other remedial

measures are insufficient to rectify the situation. *Shouse v. State*, 849 N.E.2d 650, 655 (Ind. Ct. App. 2006), *trans. denied*. "On appeal, the trial judge's discretion in determining whether to grant a mistrial is afforded great deference because the judge is in the best position to gauge the surrounding circumstances of an event and its impact on the jury." *Id*. Therefore, we review the trial court's decision solely for an abuse of discretion. *Id*. "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court." *Vaughn v. State*, 971 N.E.2d 63, 68 (Ind. 2012). To prevail on appeal, Kilgore must demonstrate that Cleveland's statement was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Norton v. State*, 785 N.E.2d 625, 627 (Ind. Ct. App. 2003).[1] "To determine the gravity of peril, an appellate court considers the probable persuasive effect of the misconduct on the jury's decision, not the degree of impropriety of the conduct. Generally, a timely and accurate admonition is an adequate curative measure for any prejudice that results." *Id*. (citation omitted). "We seldom find reversible error when the trial court admonishes the jury to disregard [a] statement made during the proceedings." *Davidson v. State*, 580 N.E.2d 238, 241 (Ind. 1991).

---

[1] The parties disagree about whether Cleveland's statement constitutes an evidentiary harpoon, but they agree that the prosecutor did not intentionally elicit the statement. Therefore, we need not resolve the terminology dispute.

[11]   Kilgore argues that the trial court's admonition in this case "was not sufficient to overcome the taint of the allegation" that he was involved in drug activity because "[t]he State's case was entirely based" on what he characterizes as "suspect eyewitness identifications." Appellant's Br. at 11, 12. We first observe that Cleveland's statement was brief and did not implicate Kilgore directly in drug activity or describe that activity in any detail. We further observe that the State's case was also based on Cleveland's identification of Kilgore from the security footage, as well as the police officers' testimony about Kilgore's attempt to clear his name, which did not pan out as well as Kilgore might have hoped. Kilgore criticizes the clarity of the footage and questions Cleveland's ability to recognize his clothing, but we note that Cleveland also based her identification on Kilgore's gait and the posture of his left arm. The jurors were able to see the footage for themselves and evaluate Cleveland's credibility accordingly.

[12]   Likewise, the briefness of Roberts's encounter with Kilgore, Wells's distance from and profile view of Kilgore, and the alleged suggestiveness of the photo array regarding the subjects' physiques and clothing were all thoroughly explored before the jury on direct, cross, and redirect examination. Kilgore disregards Roberts's testimony that she "saw his face and eyes" as he ran down the platform stairs, Sergeant Morgan's testimony that Wells "immediately" identified Kilgore as the robbery suspect in the photo array, and Cleveland's testimony that Kilgore called her shortly after the robbery and said that he had money and was out of breath from running. Tr. Vol. 1 at 72, 160.

[13]     Based on the foregoing, we conclude that the probable persuasive effect of Cleveland's brief statement on the jury's decision was minimal. We further conclude that the trial court's prompt and thorough admonition instructing the jury to disregard Cleveland's statement cured any resulting prejudice. Therefore, we conclude that the trial court did not abuse its discretion in denying Kilgore's motion for mistrial. His conviction is affirmed.

[14]     Affirmed.

Vaidik, C.J., and Mathias, J., concur.