Jeffrey NASSER, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 49A02–9206–CR–283.

Court of Appeals of Indiana,
Second District.

Feb. 7, 1995.

J.J. Paul, III, Ober Symmes Cardwell Voyles & Zahn, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Preston W. Black, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION UPON REHEARING [1]

SULLIVAN, Judge.

Jeffrey Nasser (Nasser) appeals his conviction of operating a vehicle with .10 percent or more alcohol in his blood (OVBAC .10%), a class C misdemeanor.[2]

We affirm.

Nasser raises two issues for our review upon this rehearing:

> (1) whether the trial court erred in admitting the result of an Intoxilyzer 5000 breath test; and

> (2) whether the trial court erred in refusing to permit Nasser to cross-examine

---

1. On March 17, 1994, we issued an opinion reversing the judgment. *Nasser v. State* (1994) 2d Dist.Ind.App., 630 N.E.2d 571 (Rucker, J., dissenting). On September 21, 1994, we issued an opinion upon rehearing which affirmed the conviction in light of *Baran v. State* (1994) Ind., 639 N.E.2d 642. *See Nasser v. State* (1994) 2d Dist.Ind.App., 639 N.E.2d 1054. That affir-mance, however, was improvidently issued because we inadvertently failed to consider the other issues presented by Nasser in his appeal.

2. I.C. 9–11–2–1 (Burns Code Ed.Repl.1987) (recodified as I.C. 9–30–5–1 (Burns Code Ed.Repl. 1991)).

the investigating police officer regarding the pharmacology of alcohol absorption.

The facts most favorable to the judgment reveal that in the early morning hours of November 14, 1990, Nasser was driving northbound on Meridian Street after dining and drinking in downtown Indianapolis. Investigation revealed that Nasser had struck three parked cars as he swerved to avoid a southbound vehicle that veered into his lane. An Indianapolis Police Department (IPD) accident officer, Julie Schiff (Officer Schiff), arrived on the scene at approximately 1:16 a.m. and spoke with Nasser. Officer Schiff noted that Nasser appeared intoxicated. She then performed field sobriety tests, the results of which, combined with her observations, lead her to believe that Nasser was intoxicated.[3] After Nasser consented to take a chemical test for intoxication, Officer Schiff handcuffed him and placed him in the back seat of her police car at 1:40 a.m.

Nasser testified that he waited in the police car by himself for perhaps ten or fifteen minutes before Officer Schiff transported him to the downtown IPD station. At 2:10 a.m., Officer Schiff administered an Intoxilyzer 5000 breath test to Nasser at the station, resulting in a printout reading that listed "BAC Value" at ".14". Record at 269, 292. The trial court found Nasser not guilty of Count I, Operating a Vehicle While Intoxicated (OVWI), and guilty of Count II, OVBAC .10%.

## I. Admissibility of Intoxilyzer Test Results

Nasser launches a three-part argument, alleging that the State failed to lay a sufficient evidentiary foundation to permit the trial court to admit the Intoxilyzer test results into evidence. I.C. 9–11–4–5(d) (Burns Code Ed.Repl.1987) governs the admissibility of the breath test results in this case. A proponent who wishes to admit Intoxilyzer

test results must meet three foundational requirements: (1) the operator who administered the test must be certified by the Indiana University School of Medicine Department of Pharmacology and Toxicology (Department of Toxicology); (2) the equipment used in the test must have been inspected and approved by the Department of Toxicology; and (3) the operator must have followed the procedures approved by the Department of Toxicology. I.C. 9–11–4–5(d), *repealed by* Acts 1991, P.L. 2–1991, § 109. For present provision, *see* I.C. 9–30–6–5(d) (Burns Code Ed.Supp.1994). *See also Sell v. State* (1986) 3d Dist.Ind.App., 496 N.E.2d 799, 801. If the proponent fails to meet the foundational requirements, the results should not be admitted into evidence.

Here, Nasser challenges both the first and the third of the above requirements. He first contests the sufficiency of the breath test operator's certification. He next maintains that Officer Schiff's testimony failed to reveal that she attached a new mouthpiece to the breath tube or that she checked the print record to be sure it was correct when administering the Intoxilyzer 5000 test. Both are required steps in the approved testing procedure as set forth by the Department of Toxicology. Ind.Admin.Code tit. 260, r. 1.1–4–4(4) and (5) (1988). Nasser also contends that Officer Schiff failed to observe him for a twenty-minute period, another step that the Department of Toxicology guidelines require. The State's lone counter to each of these attacks charges that Nasser has waived all challenges to the sufficiency of the State's foundation because he objected only upon the basis of hearsay when the State first offered the test result into evidence.

### Waiver

█ The State is incorrect in its assertion that Nasser only objected to the admission of

---

**3.** Officer Schiff described giving Nasser a Horizontal Gaze Nystagmus (HGN) test and a portable breathalyzer test. The trial court deemed inadmissible the results of the latter test. Officer Schiff also administered "one-leg stand" and "nine-step walk and turn" tests. Record at 293–312. The State's brief indicates that Nasser failed the field sobriety tests. This is an inaccurate characterization of the record. Officer

Schiff concluded that Nasser *may have been* intoxicated based upon the field tests. During cross-examination, Officer Schiff admitted that Nasser's HGN test revealed an onset *at* forty-five degrees, not *before* forty-five degrees, as she mistakenly testified during direct examination. She then admitted that such a reading may result in a lower breath alcohol reading.

the Intoxilyzer results upon the basis of hearsay. The record clearly reveals that Nasser lodged objections based upon inadequate foundation. First, Nasser objected to an exhibit purportedly acknowledging Officer Schiff's certification as a breath test operator, the first of the three foundation requirements discussed earlier. Nasser also fashioned the following objection before the State introduced the Intoxilyzer results:

"And I'd like to briefly for the record, to show that I believe the foundation hasn't been adequately laid for a twenty minute period of time of continuous observation. Based upon the police officer's testimony as well as Mr. Nasser's, prior to the giving of the test. I do not believe an adequate foundation has been laid at this time." Record 290–91.

■ Nasser contends that the final sentence of this objection, "I do not believe an adequate foundation has been laid ...", is sufficient to preserve all alleged foundation deficiencies upon appeal. We disagree. Such an objection is a general one, and, as such, is ineffective to preserve error for appellate review.[4] *Coleman v. State* (1984) Ind., 465 N.E.2d 1130, 1135. Failure to specify the reasons why the evidentiary foundation was inadequate results in waiver of the issue upon appeal. *Id.* at 1135; *See also Bellmore v. State* (1992) Ind., 602 N.E.2d 111, 121, *reh'g denied.*

Here, none of Nasser's objections addressed Officer Schiff's alleged failure to check the print record, or her alleged failure to attach a new mouthpiece to the breath tube. Moreover, these grounds are not apparent from the context of a general "inadequate foundation" objection. Nasser lodged specific objections regarding the evidentiary foundation necessary to admit the Intoxilyzer results when he challenged Officer Schiff's certification and her compliance with a twenty-minute observation period. Accordingly, he preserved his right to challenge the sufficiency of the State's foundation only in those two areas. He may not raise others for the first time upon appeal. We will nevertheless

address the merits of each of Nasser's contentions.

*Sufficiency of the Operator's Certification*

■ During the direct examination of Officer Schiff, the State offered State's Exhibit 1 pursuant to Ind.Trial Rule 44. Over Nasser's objection, the trial court admitted the exhibit. At the outset, we recognize that the sufficiency of a foundation is a matter addressed to the sound discretion of the trial court reversible only for an abuse of discretion. *Daum v. State* (1993) 1st Dist.Ind. App., 625 N.E.2d 1296, 1297, *trans. denied, accord Sutton v. State* (1981) 1st Dist.Ind. App., 422 N.E.2d 430.

■ The first page of State's Exhibit 1 is a letter to the Clerk of the Marion County Circuit Court from the Department of Toxicology bearing the stamped signature of its interim director, Dr. Robert B. Forney, Sr. (Forney). It indicates that those officers whose names appear on two attached lists were properly recertified as breath test operators in Marion County for two years effective September, 1990. Officer Schiff's name appears only upon the second of the attached pages, as does a stamped certification from the Marion County Circuit Court Clerk's office. The stamp does not identify what information it certifies, nor does it identify the number of pages being certified. Additionally, handwritten numbers appear beside each of the officers' names and it appears as though someone highlighted several of the names in the original.

■ Much of Nasser's argument regarding State's Exhibit 1 focuses upon its authenticity as a true and accurate copy of official records. Rule 44(A)(1) of the Indiana Rules of Trial Procedure permits an official record otherwise admissible for any purpose to be evidenced by a copy attested by the officer having the legal custody of the record or by his or her deputy. The letter from the Department of Toxicology, along with the lists of officers attached to it, were filed with the

---

**4.** Under the newly-adopted Indiana Rule of Evidence 103(a)(1), the objecting party must state specific grounds. However, if the grounds are apparent from the context of the objection, they need not be stated.

Marion County Circuit Court.[5] T.R. 44(A)(1) does not require certification that the officer has custody of the record, although it is permitted. *McCollum v. State* (1991) Ind., 582 N.E.2d 804, 814, *reh'g denied; Wilson v. State* (1987) Ind., 513 N.E.2d 653, 656.

It is true that the only stamped certification appears on the third and final page of State's Exhibit 1. It is also true that it does not specifically incorporate the preceding two pages. However, Indiana courts interpreting T.R. 44(A)(1) have held that each page or document in an exhibit need not be separately certified if one page or document in that exhibit incorporates the other pages or documents. *See Allen v. State* (1988) Ind., 518 N.E.2d 800; *Badelle v. State* (1982) Ind., 434 N.E.2d 872, 877.[6] Further, our Supreme Court has held that admission of documents is not error "when the placement of the certification in no way causes any confusion as to the authenticity of the papers." *Miller v. State* (1990) Ind., 563 N.E.2d 578, 584. *Accord Chanley v. State* (1991) Ind., 583 N.E.2d 126.[7]

Several cases interpreting T.R. 44(A)(1) have examined documents in an exhibit to determine whether they are "covered" by a purported certification. *E.g., Chanley, supra* at 131; *Powers v. State* (1986) Ind., 499 N.E.2d 192, 194. Here, all three pages of State's Exhibit 1 are stapled together. The first page specifically refers to officers who were given a breath test operator certification exam by the Department of Toxicology, and who had been recertified for two years, effective September, 1990. The heading at the top of the second page reads as follows: "BREATH TEST OPERATOR RECERTI-FICATION[,] September, 1990[,] MARION COUNTY, INDIANA". Record 228–2. It then lists several police officers under their various departmental affiliations. The third and final page, upon which Officer Schiff's name appears, lists several officers, all from the Indianapolis Police Department. The following heading appears on the third page: "BREATH TEST OPERATOR RECERTI-FICATION[,] September, 1990[,] MARION COUNTY, INDIANA[,] (cont'd)". Record at 228–3.

Granted, the exhibit could have been, in the words of the trial judge, "tied in a little bit better". Record at 227. Nevertheless, we discern no confusion regarding the authenticity of State's Exhibit 1 because it is clear that all of the pages are part of the same document despite the fact that the pages are not sequentially numbered. The attestation letter clearly incorporates the two officer lists, and the second officer list is clearly a continuation of the first. Moreover, we are in no position to speculate about the source of the apparent handwritten alterations on the document. The court clerk certified the document as a true and complete copy of official records. Any such speculation affects the weight which the trier of fact may attribute to the exhibit. Therefore, the clerk's stamp on the final page of State's Exhibit 1 properly certifies the entire exhibit as true and complete copies of public records.

■ Reaching that conclusion alone does not solve the certification issue. Nasser also appears to challenge the sufficiency of the attestation page bearing Dr. Forney's stamped signature, contending that it is hearsay and inadmissible to show that Officer Schiff was properly recertified.[8] When this case arose, I.C. 9–11–4–5(a) (Burns Code Ed.Repl.1987) authorized the director of the Department of Toxicology to adopt rules regarding the selection, training, and certifica-

---

**5.** A file-stamp on the first page of State's Exhibit 1 which bears the signature of Marion Circuit Court Clerk, Faye I. Mowery, indicates that the Marion Circuit Court filed the document on October 18, 1990.

**6.** *See also Thomas v. State* (1984) Ind., 471 N.E.2d 677, 680, *reh'g denied* (holding that county court administrator properly certified all records in an exhibit because term "foregoing" was used in the certification).

**7.** This is true even if the term "foregoing" appears on the first page of an exhibit.

**8.** The record reveals that Nasser argued as follows: "I do not believe that specific certification complies with [the rules permitting official documents to be placed in evidence], so the fact that it has the Department of Toxicology heading, that fact that it has Dr. Forney's signature, all is hearsay, because Forney isn't here saying that [Officer Schiff] was recertified subject to cross-examination." Record at 226.

tion of breath test operators.[9] The statute also provides that the department shall send "certificates" issued in accordance with those rules to the circuit court clerk of the county in which the operator administers breath tests.[10] I.C. 9–11–4–5(b). I.C. 9–11–4–5(c)(1) further provides that certified copies of those "certificates" are admissible in an OWI prosecution.[11] *Accord Regan v. State* (1992) 3d Dist.Ind.App., 590 N.E.2d 640, 646. The director of the Department of Toxicology is charged with certifying and recertifying officers who meet the approved requirements to operate breath test equipment. Ind.Admin.Code tit. 260, r. 1.1–1–3(b)–(i) (1988).

Recent Indiana decisions have held that letters to circuit court clerks bearing the signature of the director of the Department of Toxicology and the names of recertified officers qualify as "certificates". *See Regan, supra,* 590 N.E.2d 640; *Platt v. State* (1992) Ind., 589 N.E.2d 222; *English v. State* (1992) 1st Dist.Ind.App., 603 N.E.2d 161; *Hatch v. State* (1989) 3d Dist.Ind.App., 547 N.E.2d 276. The certification deemed acceptable in *Regan, supra,* is almost identical to State's Exhibit 1 in this case. Both are letters written on Department of Toxicology stationery, and both bear the signature of the current department director. The text of both letters indicate that officers met the requirements to operate breath test machines, and include the effective dates of recertification. There are only slight differences between the recertification letter in *Regan* and the one in this case,[12] none of which mandate a different result here. As heretofore stated, all three pages of State's Exhibit 1 are part of the same document in light of their continuity and context.

The trial judge did not abuse his discretion in allowing the admission into evidence of State's Exhibit 1 to show that Officer Schiff was properly certified as a breath test operator.

### Officer's Alleged Failure to Follow Approved Procedures

Nasser contends that the trial court erred in admitting the Intoxilyzer 5000 test results into evidence because testimony at trial failed to show that Officer Schiff followed the proper test administration procedures. As stated above, we will reverse a ruling upon sufficiency of foundation requirements only upon a finding that the trial judge abused his discretion. *Daum, supra,* 625 N.E.2d at 1297; *Sutton, supra,* 422 N.E.2d 430.

Pursuant to I.C. 9–11–4–5 [13], the Department of Toxicology promulgated, *inter alia,* the following rules governing the administration of breath alcohol tests:

"(a) The director shall approve a method for the administration of a test to analyze breath for ethanol for each approved type of equipment in use. Such approved method shall be kept on file in the state department of toxicology of Indiana University School of Medicine.

---

**9.** I.C. 9–30–6–5(a) (Burns Code Ed.Supp.1994) now gives the Department of Toxicology the same authorization.

**10.** The current codification of this requirement is I.C. 9–30–6–5(b).

**11.** Now, I.C. 9–30–6–5(c)(1) provides that "Certified copies of certificates issued in accordance with rules adopted under [the statute] ... [a]re admissible in [an OWI proceeding]."

**12.** First of all, the pages of State's Exhibit 1 in the case at bar are not numbered, while the pages of the exhibit in *Regan* are consecutively numbered. Next, the signature of the director in *Regan* appears at the end of the last numbered page. In this case, the interim director's signature appears only upon the first page, with the instruction to "See Attached List" for the names of the recertified officers. Record at 228–1.

**13.** I.C. 9–11–4–5 (Burns Code Ed.Repl.1987) provides in relevant part:

"(a) The director of the department of toxicology of the Indiana University school of medicine shall adopt rules, under I.C. 4–22–2, concerning:

\* \* \* \* \* \*

(3) The certification of the proper technique for administering a breath test.

\* \* \* \* \* \*

(d) Results of chemical tests that involve an analysis of a person's breath are not admissible in a proceeding under this article if:

\* \* \* \* \* \*

The chemicals used in the test, if any; or ... [t]he techniques used in the test; have not been approved in accordance with the rules adopted under subsection (a)."

(b) Such approved method shall be followed in making an analysis of breath for ethanol." Ind.Admin.Code tit. 260, r. 1.1–3–1(a) & (b) (1988).

The six-step approved Intoxilyzer 5000 test procedure is set forth in Ind.Admin.Code tit. 260, r. 1.1–4–4 (1988). The first step requires a twenty-minute time period before an officer administers the test during which the subject may not have had any foreign substance in his or her mouth. Step four requires an officer to attach a new mouthpiece to the breath tube before having a subject blow into the machine. The fifth step then compels an officer to check the print record to make sure it is correct. In this case, the trial court properly took judicial notice of these approved procedures during the State's case-in-chief. *See* I.C. 4–22–9–3 (Burns Code Ed.Repl.1990).

■ Nasser's first argument regarding test administration maintains that Officer Schiff's testimony does not specifically indicate that she attached a new mouthpiece to the breath tube before having Nasser blow into the machine, or that she checked the print record to make sure it was correct. Notwithstanding that Nasser has waived these arguments, we address the merits of his contentions.

■ Nasser correctly asserts that Indiana law requires strict compliance with the procedures adopted by the Department of Toxicology. *See, e.g., Bowman v. State* (1990) 3d Dist.Ind.App., 564 N.E.2d 309, *vacated in part on other grounds.* Failure to comply with the Department of Toxicology procedures results in the inadmissibility of breath test results pursuant to I.C. 9–11–4–5(d). *Id.* Attaching a new mouthpiece to the breath tube and checking the print record to make sure it is correct are both quality control checks, not purely ministerial actions. *Id.* However, we are satisfied that Officer Schiff's testimony is sufficient for the trial judge reasonably to have concluded that she followed steps four and five of the approved Intoxilyzer 5000 testing procedure.

During the questioning of Officer Schiff, the following exchange occurred regarding administration of the Intoxilyzer test:

"[Officer Schiff]: I explained the test to [Nasser]. At this time I took the card that we were referring to earlier. I filled out Mr. Nasser's name, first time observed, the location of the instrument, and my name. I then took the card, hit the start button on the machine, entered the card into the machine. At this time the machine purged its last test. During this time I explained to Mr. Nasser that when I told him to, he was to take the mouth piece in his mouth, his lips around the mouth piece. That he was to blow out hard and steady blow. That if he was blowing hard enough and long enough, that he would activate a tone. At that time he was to keep blowing till the machine shut itself off. The way that it would indicate that to Mr. Nasser and myself was that the tone would stop. I told him that if the tone began to beep at him, short intermittent tones, that meant that either he wasn't blowing hard enough or steady enough to keep the machine going. I indicated to him at that point, that if that happened, he would have one more opportunity to continue the test. At that time I asked Mr. Nasser if he understood and he said, 'Yes.'

Q: Okay. Where did you get the tube from?

[Officer Schiff]: The tube was wrapped in a piece of plastic that is sealed on both ends to keep it sanitary. It's ... would be more apt to call it a mouthpiece, not a tube, because the tube is ... actually touch [sic] the machine." Record at 254–56.

While it is true that Officer Schiff did not specifically state that she used a new mouthpiece, one may clearly infer that fact from her testimony. She testified that she retrieved the breath tube used during Nasser's test from a sealed, sanitary plastic wrapper. Additionally, although Officer Schiff did not specifically state that she checked the print record to "make sure it was correct", the only logical conclusion we may draw from the facts was that she did in fact do so. Officer Schiff testified that the previous test had been purged from the machine. The machine clearly issued a readout. We must conclude that Officer Schiff believed the

readout to be "correct" because she did not feel the result was so unreliable as to mandate another test. While we agree that Indiana law requires strict compliance with those procedures established by the Department of Toxicology, we see no reason to require an officer to recite the regulation verbatim from the witness stand when it is clear that the officer followed the required procedures. Here, Officer Schiff's testimony was sufficient to demonstrate that she complied with steps four and five of the approved Intoxilyzer 5000 testing procedure.

■ Nasser offers an alternative argument challenging the test administration procedure. He points to the fact that Officer Schiff left him handcuffed in her police car unattended for ten to fifteen minutes while she investigated a report that one of the vehicles Nasser hit was stolen. Nasser concludes that because Officer Schiff did not maintain a continuous observation period for twenty minutes, her testimony that she did not see him eat, drink, smoke, or put any foreign substance in his mouth during the twenty minutes preceding the test was insufficient to prove the State's obligation under step one of the approved Intoxilyzer 5000 testing procedure. We disagree.

The First District of this court has held that the approved procedure for operating an Intoxilyzer 5000, as outlined in Ind.Admin.Code tit. 260, r. 1.1–4–4 and promulgated pursuant to Ind.Admin.Code tit. 260, r. 1.1–3–1(b), does not require twenty minutes of continuous observation. *Daum, supra,* 625 N.E.2d 1296. In fact, the *Daum* majority characterized an identical "continuous observation" argument as "specious", noting that "one may wonder how the officer could be expected to drive without taking his eyes off of his passenger." *Id.* at 1297.

Here, Officer Schiff testified that she began observing Nasser at 1:40 a.m., when she placed him in her squad car. She administered the Intoxilyzer test at 2:10 a.m. Although she had no independent recollection of the exact time her observation began while testifying, State's Exhibit 3, a copy of the Intoxilyzer test card and result printout that

Officer Schiff signed, indicates that she noted "0140" (1:40 a.m.) above a caption that reads, "TIME FIRST OBSERVED". Record at 292. Keeping in mind that Nasser was handcuffed during the short period that Officer Schiff was away from the police car and given Officer Schiff's testimony that she did not see Nasser eat, drink, put any foreign substance in his mouth, or smoke between 1:40 a.m. and 2:10 a.m., we conclude that the State met its burden of establishing the twenty-minute observation period required to obtain a valid breath test.

The trial judge did not abuse his discretion in permitting the admission of the breath test results.

## II. Restricting Cross–Examination of Investigating Officer

■ At trial, the State offered Officer Schiff to testify concerning her role in the accident investigation and about her Intoxilyzer test administration. The State did not attempt to tender her as an expert in the pharmacology of alcohol absorption. Nasser cross-examined Officer Schiff regarding the training she received at the Department of Toxicology to become a certified breath test operator. When questioning in this area continued, the trial court sustained the State's objection to additional testimony regarding her knowledge of a person's alcohol absorption and elimination, stating that "[Officer Schiff's] not offered as an expert witness." Record at 370. Nasser then called Officer Schiff and elicited further testimony from her regarding her training via an offer of proof immediately before he began his defense.

The thrust of Nasser's argument on this point seems to assert that Officer Schiff possessed knowledge sufficient to testify about the pharmacology of alcohol absorption. Specifically, he contends that alcohol absorption is a scientific field beyond the knowledge of the average layperson, and that his offer of proof shows that Officer Schiff's training to become an Intoxilyzer operator equipped her with the requisite specialized knowledge to answer questions about the pharmacology of alcohol absorption.[14]

14. These are the two foundation requirements

Indiana courts have required to qualify a witness

The record makes it clear Nasser called Officer Schiff solely to make a record in an effort to preserve properly his response to the trial court's decision to not allow Officer Schiff to testify about alcohol absorption. Procedurally, he was correct in doing so.[15] Accordingly, our review is limited to whether the trial judge abused his discretion in limiting the area into which Nasser could delve during cross-examination, and not whether the trial judge improperly deemed that Officer Schiff was not an expert in alcohol absorption.

◼ A trial court has wide discretion to determine the scope of cross-examination, and we will reverse only for a clear abuse of that discretion. *Braswell v. State* (1990) Ind., 550 N.E.2d 1280, 1282; *Fassoth v. State* (1988) Ind., 525 N.E.2d 318; *Lahr v. State* (1994) 2d Dist.Ind.App., 640 N.E.2d 756, 762. The general rule is that cross-examination must lie within the scope of the direct examination. *Hudgins v. State* (1983) Ind., 451 N.E.2d 1087, 1090; *Allread v. State* (1991) 2d Dist.Ind.App., 582 N.E.2d 899. A trial court abuses its discretion in controlling the scope of cross-examination when the restriction relates to a matter which substantially affects the defendant's rights. *Andrews v. State* (1992) 5th Dist.Ind.App., 588 N.E.2d 1298, 1302; *Terre Haute First Nat. Bank v. Stewart* (1983) 1st Dist.Ind.App., 455 N.E.2d 362.

Accordingly, Nasser must demonstrate how he was prejudiced by the trial judge's actions. *Braswell, supra,* 550 N.E.2d at 1282.

In *Lambert v. State* (1987) Ind., 516 N.E.2d 16, 22, the State called a medical records supervisor to authenticate medical records. She had been trained only in reading and transcribing medical terminology. When the defense attempted to cross-examine her regarding certain prescribed medication, the trial court sustained the State's objection, pointing out that the supervisor "had not been qualified as a person with knowledge regarding the purposes and uses of the medication." *Id.* Significant to our Supreme Court in *Lambert* was the fact that the defendant was not precluded from calling additional witnesses to explain the nature, purposes and uses of the medication. *See also Lyles v. State* (1991) 4th Dist.Ind.App., 576 N.E.2d 1344, 1350, *trans. denied* (defendant should have introduced sought-after testimony in presentation of defense, not during cross-examination).

The same is true in this case. The record reveals that direct examination of Officer Schiff elicited no information regarding training in alcohol absorption.[16] The only detailed information regarding Officer Schiff's training in the area of alcohol absorption was elicited during Nasser's offer of proof. Additionally, the State did not tender Officer

---

to testify in a specialized area. *See Corbin v. State* (1990) Ind., 563 N.E.2d 86; *Boothe v. State* (1982) 4th Dist.Ind.App., 439 N.E.2d 708. Nasser sought to use the knowledge Officer Schiff acquired during training to rebut the statutory presumption in I.C. 9–11–4–15 (Burns Code Ed. Repl.1987) that a blood alcohol test within three hours of the operation of a vehicle is sufficient to prove that blood alcohol content at an earlier time is at a certain level. Nasser also indicated that he wished to question Officer Schiff regarding a segment of a Department of Toxicology manual entitled, "Possible Errors in Blood Alcohol Figures". Record at 419, 430–34. Nasser's argument contends that Officer Schiff merely would have been required to answer those questions about which she possessed specialized knowledge and to state her inability to answer those beyond her knowledge.

15. Indiana courts repeatedly have held that a proponent must make an offer of proof on direct examination. *Burns v. State* (1986) 4th Dist.Ind. App., 500 N.E.2d 1243, 1248, *vacated on other grounds; Carter v. State* (1981) 1st Dist.Ind.App., 422 N.E.2d 742, 744; *Thomas v. State* (1977) 1st

Dist., 172 Ind.App. 470, 360 N.E.2d 1006, 1009; *State v. Quackenbush* (1973) 1st Dist., 158 Ind. App. 603, 303 N.E.2d 830, 834; *Sipes v. State* (1973) 1st Dist. 155 Ind.App. 380, 293 N.E.2d 224, 227. This line of cases also indicates that the offer must be certain and must state with specificity the facts sought to be established. *See, e.g., Burns v. State, supra.* Indiana Rule of Evidence 103(a)(2) now addresses offers of proof. The Rule may be interpreted to relax somewhat the rigid specificity requirement of an offer to prove because it states merely that "the substance of the evidence" be made known to the trial court or be "apparent from the context within which the questions were asked."

16. The extent of her direct examination testimony pertaining to training revealed that she had been a member of IPD for five years, that she had been trained to recognize signs of intoxication, and that she received training in administering Intoxilyzer chemical breath tests at the Indiana Law Enforcement Academy.

Schiff as an expert in chemical breath testing for alcohol absorption. Thus, it was within the trial court's wide discretion to curtail Nasser's cross-examination of Officer Schiff.

 Furthermore, Nasser has failed to show any prejudice. We disregard as harmless those errors in the admission or exclusion of evidence that do not affect the substantial rights of the parties. *Bowman v. State* (1991) Ind., 577 N.E.2d 569, 571; *Timmons v. State* (1992) Ind., 584 N.E.2d 1108, 1112; *Small v. State* (1994) 3d Dist.Ind.App., 632 N.E.2d 779, 786, *trans. denied.* Here, Nasser was not precluded from calling additional witnesses to elicit the alcohol absorption testimony he sought. Nasser could well have elicited such opinions about alcohol metabolism from a chemist or a doctor with sufficient expertise in the field during the presentation of his defense. In fact, he could have called Officer Schiff as his own witness, not merely for an offer of proof, but in an attempt to have her sufficiently qualified to testify about those variances in alcohol absorption that Nasser sought to elicit.[17] He chose not to do so. Even if the trial court had committed an error in limiting the scope of cross-examination, it was harmless, and did not prejudice Nasser. *See Small, supra* at 786; *Koke v. State* (1986) 3d Dist.Ind.App., 498 N.E.2d 1326, 1330, *trans. denied.*

The trial court did not err in limiting the scope of the cross-examination of Officer Schiff.

### CONCLUSION

The trial court did not err in admitting the result of the Intoxilyzer 5000 test, nor did it err in refusing to permit Nasser to cross-examine Officer Schiff regarding the pharmacology of alcohol absorption.

The judgment is affirmed.

FRIEDLANDER and RUCKER, JJ., concur.

---

**17.** Indeed, most of the questions he asked on his offer to prove would have been the identical questions necessary to lay a foundation for the trial court that she was an expert.