## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 30 2017, 8:56 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Thomas F. Little
Power, Little, Little & Little
Frankfort, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James B. Martin
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

James O. Jones,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

June 30, 2017

Court of Appeals Case No.
12A02-1606-CR-1502

Appeal from the Clinton Circuit Court

The Honorable Bradley K. Mohler, Judge

Trial Court Cause No.
12C01-1507-F1-669

**Bailey, Judge.**

# Case Summary

After a jury trial, James O. Jones ("Jones") was convicted of Child Molesting, as a Level 4 felony,[1] and the trial court found him to be a sexually violent predator.[2] He was sentenced to ten years' imprisonment. He now appeals.

We affirm.

# Issues

Jones raises several issues for our review. We restate these as:

I. Whether the trial court abused its discretion when it:

a. Admitted into evidence statements made by Jones during an interview with a police detective because the statements were coerced;

b. Limited the scope of Jones's inquiry during cross-examination of a witness for the State;

c. Allowed a police detective to testify as to the content of a statement made by Jones that was captured on a recording while the detective was outside the interview room; and

---

[1] Ind. Code § 35-42-4-3(b).

[2] I.C. § 35-38-1-7.5.

> II. Whether Jones's sentence is inappropriate.

# Facts and Procedural History

[4] In July 2015, Jones shared a home with his then-fiancée, Bridgett Painter ("Painter"), in Frankfort. Jones and Painter lived in the home with several of Painter's children from prior relationships, and a child Jones and Painter shared together. Among the children was K.B., who was born to Painter before her relationship with Jones. Jones and Painter's relationship began shortly after K.B.'s birth, and K.B. called Jones "Daddy."

[5] On July 17, 2015, Painter took K.B. and one other child with her to go grocery shopping. Jones stayed home. During the shopping trip, K.B. became impatient. Painter met Jones's mother at the grocery store, and Jones's mother took K.B. back to the home Jones and Painter shared, leaving K.B. with Jones.

[6] A little while later, Painter returned home from grocery shopping. Painter found both the front and back doors to the home locked, which was very unusual when Jones was home. When she entered the home, she heard K.B. screaming, "Daddy stop!" (Tr. at 135.) Painter first went to K.B.'s room, but did not find the girl there and continued to search the home.

[7] Painter went to the bedroom she and Jones shared, and found the door closed and blocked from the inside. Eventually, whatever was blocking the door was moved and Painter could open the door. When she did, she saw K.B. bent over

the bed with her pants pulled down around her legs and her bare bottom exposed. Jones was standing over K.B. with his hand on K.B.'s bottom.

[8] Painter removed K.B. from the room and asked Jones for an explanation for his conduct. Jones stated that he was just tickling K.B. Painter knew that K.B. did not like when Jones tickled her, but she had never seen Jones tickle K.B. in that manner. Painter subsequently contacted police and took K.B. to a hospital for a doctor's exam.

[9] During the ensuing police investigation, Detective Hickson of the Frankfort City Police Department asked Jones to come to the police station for an interview. During the interview, Jones signed a written waiver of his *Miranda* rights and answered questions posed by Detective Hickson. The interview, which took approximately 1 ¾ hours, included Jones admitting to certain conduct with K.B. Before the interview concluded, Jones wrote an apology letter to K.B. After the interview ended, Jones was arrested.

[10] On July 23, 2015, Jones was charged with one count of Child Molesting, as a Level 1 felony,[3] and one count of Child Molesting, as a Level 4 felony.

[11] On April 11, 2016, Jones filed a motion to suppress evidence, seeking to suppress his statements during his interview with Detective Hickson and any

---

[3] I.C. § 35-42-4-3(a).

evidence obtained therefrom. On the same day, the trial court denied the motion to suppress.

[12] On April 12 and 13, 2016, a jury trial was conducted. During the trial, just prior to Detective Hickson's testimony, Jones moved to exclude any evidence related to his pre-trial motion to suppress. The trial court noted Jones's objection and overruled it.

[13] After the close of the State's evidence, the State moved to dismiss the count of Child Molesting, as a Level 1 felony. The remaining charge of Child Molesting, as a Level 4 felony, was submitted to the jury, which found Jones guilty as charged.

[14] On June 7, 2016, the trial court entered judgment of conviction against Jones and conducted a sentencing hearing. At the hearing's conclusion, the trial court adjudicated Jones as a sexually violent predator and sentenced him to ten years imprisonment, with seven years executed in the Indiana Department of Correction and three years suspended to probation.

[15] This appeal ensued.

# Discussion and Decision

## Evidentiary Matters

### Standard of Review

[16] Jones challenges numerous of the trial court's rulings on the admissibility of evidence and the conduct of cross-examination. Decisions on evidentiary matters and the conduct of examination of witnesses by counsel are left to the sound discretion of the trial court. We will reverse only when there has been an abuse of discretion, which occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or when the court errs on a legal matter. *Wilson v. State*, 973 N.E.2d 1211, 1213-14 (Ind. Ct. App. 2012). Even when the trial court errs, we will not reverse the court's decision when the error was harmless, that is, when the error did not prejudice the substantial rights of a party. Ind. Trial Rule 61; *Wilson*, 973 N.E.2d at 1214.

### Coercion

[17] Jones's first challenge to the trial court's evidentiary rulings contends that the trial court erred when it admitted into evidence statements Jones made during a recorded police interview. Jones contends that Detective Hickson, who conducted the interview, made false and misleading statements that overbore Jones's will and resulted in Jones making coerced admissions of criminal conduct toward K.B. Jones frames this claim as a challenge to the trial court's denial of his motion to suppress evidence. However, because Jones appeals from a judgment and not directly from an interlocutory order upon a motion to

suppress, an appeal from the motion to suppress is not viable. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). Accordingly, we review his challenge under the same standard as any challenge to the admission of evidence at trial, and apply an abuse of discretion standard. *Id.*

[18] Whether to admit a defendant's statements into evidence is a matter within the trial court's discretion in light of the totality of the circumstances before it. *Miller v. State*, 770 N.E.2d 763, 767 (Ind. 2002). Upon appeal, we do not reweigh evidence, "'but instead examine the record for substantial, probative evidence of voluntariness.'" *Id.* (quoting *Schmitt v. State*, 730 N.E.2d 147, 148 (Ind. 2000)). The State must prove beyond a reasonable doubt that the defendant's waiver of his rights was voluntary, and that his confession was voluntarily given. *Id.* (citing *Schmitt*, 730 N.E.2d at 148). When reviewing a trial court's ruling that a statement was made voluntarily, numerous factors may be considered as within the totality of the circumstances. Such factors include whether the statement was the result of police coercion; the length, location, and continuity of a police interrogation; and the defendant's maturity, education, physical condition, and mental health. *Id.* (citing numerous decisions of the United States Supreme Court and Indiana courts).

[19] "We must determine, in light of the totality of the circumstances, whether the police conduct overbore the defendant's will, thus rendering his statement involuntary." *Id.* This inquiry "focuses on the entire interrogation, not on any single act by police or condition of the suspect." *Washington v. State*, 808 N.E.2d 617, 622 (Ind. 2004). Thus, whether police engaged in deception is

among the factors that may be considered in evaluating whether a statement was coerced or otherwise offered involuntarily, but will not necessarily be dispositive. *Miller*, 770 N.E.2d 767 n. 5. Moreover, "if the police have a good faith basis for their technical falsehood, then their action will not be deemed deceptive." *Id.* A defendant's statement may also be the product of coercion, and thus inadmissible, if it is obtained through promise of immunity or mitigation of punishment. *Massey v. State*, 473 N.E.2d 146, 148 (Ind. 1985). But "vague and indefinite statements by the police that it would be in a defendant's best interest if he cooperated do not render a subsequent confession inadmissible." *Malloc v. State*, 980 N.E.2d 887, 902 (Ind. Ct. App. 2012), *trans. denied*.

[20] Here, Jones draws our attention to statements by Detective Hickson that he wanted to help Jones, and that helping Jones would require that Jones be open concerning his actions toward K.B. Jones also notes statements Detective Hickson made concerning the confidentiality of the contents of any report he might make concerning the interview with Jones. Jones further contends that Detective Hickson was deceptive with respect to the results of a medical examination performed upon K.B. at the hospital on the day of the charged conduct. Taking these together, Jones argues that his will was overborne and his statement involuntary, and that the trial court abused its discretion when it concluded otherwise and admitted his statements into evidence.

[21] A review of the video recording of the interview, Jones's statements from which are the subject of this appeal, leads us to conclude that the trial court did not

abuse its discretion. The interview commenced with Jones reviewing and signing a written waiver of his *Miranda* rights, and the interview ran less than two hours. Jones acknowledged at the beginning of the interview that he understood he was present to discuss "allegations" against him. On numerous occasions during the interview, Detective Hickson stated that he wished to help Jones and that the report on the interview would not be disclosed to the public—but Detective Hickson was also clear that he would submit the report to the prosecutor and the court, and that he could not control anything past that. In addition, at one point Jones stated that he "blacked out" during a portion of his conduct with K.B., and Detective Hickson stated that he did not believe the "black out" claim, and that a court would not find it credible. This claim came after Jones had admitted to touching K.B.'s bare buttocks. Thus, it was clear from the beginning that the purpose of the interview was to facilitate a criminal investigation, and Detective Hickson made no concrete promises of leniency in prosecution or sentencing.

[22] With respect to Detective Hickson's statements concerning the results of a medical examination of K.B., Detective Hickson advanced a claim of injury to K.B.'s anus as a stratagem to induce Jones to speak about the period during which he claimed to have "blacked out." Jones claimed that if he had penetrated K.B.'s anus, he did not intend to do so and did not remember doing so because of the "black out," and Detective Hickson told Jones that medical reports indicated that there had been injury to K.B. However, by that time in the interview, Jones had already admitted to the criminal conduct toward K.B.

And, as the State notes in its brief, Jones made numerous statements to himself while Detective Hickson was not present in the interview room indicating that Jones understood the nature of the interview, including statements recognizing that he would be walking out of the room "in handcuffs."

[23] When viewed in light of the totality of the circumstances, we cannot conclude that the trial court abused its discretion when it determined that Jones's statement was voluntarily given and admitted Jones's statements into evidence over his objection.

## Cross-Examination

[24] Jones next argues that the trial court abused its discretion in limiting the scope of cross-examination. The Sixth Amendment to the United States Constitution and Article I, section 13 of the Indiana Constitution guarantee the right to cross-examine witnesses. *Strunk v. State*, 44 N.E.3d 1, 4 (Ind. Ct. App. 2015), *trans. denied*. Governing the conduct of cross-examination is within the trial court's discretion, and only a total denial of cross-examination "'will result in an error of constitutional proportion.'" *Id.* (quoting *Stonebraker v. State*, 505 N.E.2d 55, 58 (Ind. 1987)).

[25] Generally, "cross-examination must lie within the scope of the direct examination." *Nasser v. State*, 646 N.E.2d 673, 681 (Ind. Ct. App. 1995). "'Anything less than a total denial is viewed as a regulation of the scope of cross-examination by the trial court, and will be reviewed for an abuse of discretion.'" *Id.* A trial court abuses its discretion in governing cross-

examination when it imposes a restriction that "relates to a matter which substantially affects the defendant's rights." *Id.* On appeal, a defendant must demonstrate how he was prejudiced by the trial court's restriction of the scope of cross-examination. *Id.* We will not reverse the trial court if the defendant fails to identify prejudice from the restriction of cross-examination. *Ingram v. State*, 547 N.E.2d 823, 828 (Ind. 1989).

[26] Jones complains here that the trial court's limitation of the scope of cross-examination was overly restrictive, and that his rights were prejudiced as a result. Specifically, Jones contends that the trial court erred when, on hearsay grounds, it did not permit him to extend beyond the bounds of the evidence introduced by the State in its direct examination of Detective Hickson concerning his interrogation of Jones. Jones argues that because the trial court did not require the introduction of the complete recording of the interrogation, the only way he could have introduced evidence from the interrogation for purposes of completeness was by testifying himself—and this, in turn, implicated his right against self-incrimination as set forth in the Fifth Amendment to the United States Constitution.

[27] We disagree with Jones. The trial court's limitation of cross-examination to the matters in the State's direct examination of Detective Hickson comports with the proper conduct of cross-examination: "cross-examination *must lie within the scope of the direct examination*." *Nasser*, 646 N.E.2d at 681 (emphasis added). But the trial court's compliance with this is precisely what Jones complains of; indeed, Jones's brief characterizes the trial court's purported error thusly: "The

Trial Court unlawfully limited Jones's ability to cross-examine Detective Hickson by placing a restriction for addressing issues, questions and topics only raised through the State's direct examination of Detective Hickson." (Appellant's Br. at 16.) There is, then, no abuse of discretion to be found with the trial court's adherence to the legal requirements of cross-examination.[4]

[28] With respect to Jones's concerns with completeness, we note that there were other options available to Jones that would have satisfied his concern with completeness. Jones could have sought to introduce the entirety of the recorded interview into evidence through Detective Hickson's testimony, but did not do so. Jones also could have called Detective Hickson as a witness for the defense and conducted a direct examination of Detective Hickson to inquire about other portions of the interrogation which were not part of the State's direct examination. Jones did not do this, either.

[29] Having let these opportunities go by, Jones cannot now obtain relief by complaining that the only option the trial court afforded him to fill in gaps in Detective Hickson's testimony was to waive his Fifth Amendment right against self-incrimination by testifying at trial. We accordingly find no reversible error on this issue.

---

[4] Jones complains that the State premised its objections to specific matters Jones raised based upon a misapplication of Evidence Rule 801, pertaining to matters that are or are not hearsay. Because we find no abuse of discretion in the trial court's limitation of the scope of cross-examination, we do not reach the hearsay issues Jones raises.

# Statements Made on Camera

[30] We turn to Jones's final challenge to the trial court's evidentiary rulings, in which he contends that the trial court abused its discretion when it permitted Detective Hickson to testify as to statements Jones made that were recorded by a video camera in the interrogation room while Detective Hickson was not personally present in the room. Specifically, Jones contends that Detective Hickson's statements were his opinions on what Jones had said, and that the offering of an opinion on this matter is reversible error.

[31] In making his argument, Jones draws our attention to a single case, *Williams v. State*, 43 N.E.3d 578 (Ind. 2015). In *Williams*, testimony was elicited from a police detective who observed a controlled buy of narcotics by means of a camera recording. During the trial, the officer testified, "there's zero doubt in my mind that that was a transaction for cocaine." *Id.* at 580. Reviewing Williams's conviction, the Indiana Supreme Court concluded that the trial court had abused its discretion when it admitted the officer's statement into evidence over an objection based upon Evidence Rule 704(b). That rule provides for a "bright-line exception" as to the admissibility of opinion evidence by barring testimony as to opinions concerning the guilt or innocence of a defendant. *Id.* at 581.

[32] *Williams* is readily distinguishable from Jones's case. In *Williams*, the conviction was reversed because the trial court admitted opinion evidence on the ultimate question of guilt, and not merely on an element of the offense. *Id.*

at 582. Here, however, Detective Hickson did not voice his own opinion on any question of ultimate fact. Rather, he stated what he thought Jones had said based upon watching a video recording of the interrogation room. Detective Hickson's statements do not amount to opinion evidence on innocence or guilt subject to exclusion under Evidence Rule 704(b).[5] We accordingly conclude that the trial court did not abuse its discretion when it admitted Detective Hickson's statements over Jones's contention that the testimony was inadmissible opinion evidence.

## Inappropriateness of Sentence

[33] We turn now to Jones's final contention on appeal, that the sentence the trial court imposed was inappropriate. The authority granted to this Court by Article 7, section 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the

---

[5] To the extent Detective Hickson's testimony as to Jones's statements that Detective Hickson heard only from a recording, and not while he was in the room with Jones, might have been inadmissible as hearsay, we note that Jones does not raise that question on appeal.

character of the offender. *Cardwell v. State*, 895 N.E.2d 1219, 1222-25 (Ind. 2008); *Serino v. State*, 798 N.E.2d 852, 856-57 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. *Cardwell*, 895 N.E.2d at 1225.

[34] Jones was convicted of Child Molesting, as a Level 4 felony. The sentencing range for a Level 4 felony runs from two to twelve years imprisonment, with an advisory term of six years. Here, the trial court sentenced Jones to ten years imprisonment, with seven years executed in the Indiana Department of Correction and three years suspended to probation.

[35] Looking first to the nature of Jones's offense, Jones removed K.B.'s pants and touched her bare buttocks with the purpose of arousing his own sexual desires. K.B. was seven years old at the time, and viewed Jones as her father, including calling him "Daddy." Jones was, then, in a position of trust vis-à-vis K.B. K.B. has required counseling to address molestation issues, a continuation of counseling treatment K.B. was receiving to address post-traumatic stress associated with the death of her biological father. K.B.'s behavior changed after the molestation incident, so that she would get angry, strike herself, and wish she were dead; K.B. would "shut[] down" when Jones's name was mentioned. (Amended App'x Vol. 2 at 32.) As a result of the instant conviction, the trial court adjudicated Jones to be a sexually violent predator.

[36] Looking to Jones's character, we note that Jones has a single prior conviction from approximately sixteen years before the current offense; he was, in 2000, convicted of Sexual Battery, and has been required to attend sex offender

counseling and to register as a sex offender. Jones has three children from prior relationships, and he paid child support for these children. Prior to this offense, Jones held stable employment from 1998 through 2016, with interruptions due to arrests. Coworkers at Jones's workplace spoke highly of him, and his boss reported that he would rehire Jones. Jones had a spotty employment history before 1998, and was fired from two jobs after allegations of having engaged in inappropriate sexual conduct or sexual harassment at work. In 1995, Jones was discharged from enlistment in the United States Navy due to psychiatric health problems, and has displayed suicidal ideation at various points in the past, including a threat to commit suicide several months before his trial in this case. Jones did not, however, report undergoing active treatment for his psychiatric diagnoses at the time of his offense, stating during his sentencing hearing that he believed the diagnosis to be "in error." (Tr. Vol. 2 at 65.)

[37] In light of the nature of Jones's offense and his character, including his prior history of sexual misconduct, we cannot conclude that the sentence imposed by the trial court was inappropriate.

# Conclusion

[38] The trial court's evidentiary rulings do not constitute reversible error. Jones's sentence is not inappropriate.

[39] Affirmed.

Vaidik, C.J., and Robb, J., concur.