## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 10 2019, 5:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James A. Edgar
J. Edgar Law Offices, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Supervising Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brandon T. Smith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 10, 2019

Court of Appeals Case No.
18A-CR-1042

Appeal from the Marion Superior Court

The Honorable Alicia A. Gooden, Judge

Trial Court Cause No.
49G21-1609-F2-35459

**Najam, Judge.**

# Statement of the Case

Brandon T. Smith appeals his conviction for possession of a narcotic drug, as a Level 3 felony, and his adjudication as a habitual offender. He presents three issues for our review:

> 1. Whether the trial court erred when it admitted into evidence items seized pursuant to an allegedly stale search warrant.
>
> 2. Whether the trial court erred when it admitted into evidence his statement to police, which he alleges was not voluntary.
>
> 3. Whether the trial court abused its discretion when it prohibited him from asking certain questions on cross-examination of a police officer.

We affirm.

# Facts and Procedural History

In April 2016, Indianapolis Metropolitan Police Department Detective Jason Hart began an investigation of suspected drug dealing by Smith and Smith's associate Kierre Washington. Detective Hart was also acting as a Task Force Officer with the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). Members of the Task Force conducted several controlled heroin buys between Smith and a confidential informant ("CI") between April 14 and August 31. Detective Hart observed Smith and Washington using a "stash

house"[1] located at 6451 Bay Harbor Lane in Indianapolis, where Smith would stop before each controlled buy with the CI. Tr. Vol. 2 at 227. In August, Detective Hart obtained a GPS warrant, which permitted him to place a GPS tracking device on a white pickup truck driven by Smith. Through surveillance, Detective Hart learned that Smith drove to the stash house more than fifty times between August 3 and September 7.

[4] On August 31, ATF Special Agent Launa Hunt applied for a search warrant from the United States District Court for the Southern District of Indiana. In her affidavit submitted in support of the warrant, Special Agent Hunt described the controlled buys between Smith and the CI as well as Smith's use of the residence at 6451 Bay Harbor as a stash house for his heroin trafficking activities. Special Agent Hunt also stated that Smith and Washington were the only people who had unrestricted access to the residence. Further, during August 2016, a second CI contacted investigators to report that Smith and Washington were working together to sell narcotics and that they had used the residence at 6451 Bay Harbor as a stash house. On August 31, the court issued the search warrant for the residence.

[5] During the evening of September 6, officers saw Smith arrive at the residence, and they saw him leave early the next morning, on September 7. After Smith left, IMPD officers conducted a traffic stop, arrested Smith, and drove him to

---

[1] Detective Hart explained that a "stash house" is a house where drug dealers do not reside but where they keep narcotics and firearms. Tr. Vol. 2 at 227.

the IMPD gun range, which was a nearby isolated location. Officers wanted to question him in a location where no one could see that he was talking with law enforcement. Detective Hart and Detective Andrew Deddish read Smith his *Miranda* rights and questioned him about selling drugs. Smith ultimately admitted that he had sold cocaine and heroin, but he denied any connection to the stash house other than as a visitor. In the meantime, officers executed the search warrant at the residence, where they found approximately two ounces of heroin, three firearms, two pills containing methamphetamine, baggies, three digital scales, hypodermic needles, $510 in cash, and strips of fentanyl. Officers also found personal items addressed to Smith, as well as photographs of Smith.

[6] The State charged Smith with dealing in a narcotic drug, as a Level 2 felony; possession of a narcotic drug, as a Level 3 felony; and with being a habitual offender. Prior to trial, Smith filed two motions to suppress the evidence. In his first motion to suppress, Smith alleged that his statement to police was not voluntary. In his second motion to suppress, he alleged that there was no probable cause to support the warrant, including that any probable cause had become stale because the officers waited eight days to execute the warrant. The trial court denied both motions to suppress. A jury found Smith guilty of possession of a narcotic drug, as a Level 3 felony, and adjudicated him to be a habitual offender, but the jury acquitted him of dealing in a narcotic drug. The trial court entered judgment of conviction accordingly and sentenced Smith to twenty-five years executed. This appeal ensued.

# Discussion and Decision

## *Issue One: Search Warrant*

[7] Smith first contends that the trial court erred when it admitted into evidence items seized pursuant to the search warrant, which, he contends, was not supported by probable cause at the time of execution.[2] Because Smith alleges a constitutional violation, the proper standard of appellate review is *de novo*. *See Speers v. State*, 999 N.E.2d 850, 852 (Ind. 2013).

[8] The Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution both require probable cause for the issuance of a search warrant. *Mehring v. State*, 884 N.E.2d 371, 376 (Ind. Ct. App. 2008), *trans. denied*. In *Huffines v. State*, we explained that

> "'[p]robable cause is a fair probability that contraband or evidence of a crime will be found in the location to be searched." [*United States v.*] *LaMorie*, 100 F.3d [547,] 552[ (8th Cir. 1996)]. We determine probable cause "under a totality-of-the-circumstances approach." *Id.* at 553. A delay in executing a search warrant may render stale the probable cause finding. *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir.), *cert. denied*, 516 U.S. 903, 116 S. Ct. 265, 133 L. Ed. 2d 188 (1995). Important factors to consider in determining whether probable cause has dissipated, rendering the warrant fatally stale, include the lapse of time since the warrant was issued, the nature of the

---

[2] Smith makes no contention that the search warrant was not supported by probable cause at the time it was issued.

criminal activity, and the kind of property subject to the search. *Id.*"

739 N.E.2d at 1096 (quoting *United States v. Gibson*, 123 F.3d 1121, 1124 (8th Cir. 1997)).

[9]     Smith maintains that the facts and circumstances underlying the search warrant officers executed at the stash house are analogous to those in *Huffines*. In *Huffines*, officers conducted a single controlled drug buy three days prior to the issuance of a search warrant for defendant's residence, and officers waited eight days after the warrant's issuance to search the home. The trial court denied the defendant's motion to suppress. On appeal, we acknowledged that the officers had executed the warrant within the ten-day window provided by Indiana Code Section 35-33-5-7(b) (2018), but we stated that "the fact that the search did not violate the statute does not address Huffines' separate constitutional arguments" that the probable cause supporting the search warrant had dissipated by the time of execution. *Id.* at 1095 (citing *Jaggers v. State*, 687 N.E.2d 180, 183 (Ind. 1997)).

[10]    In *Huffines*, we distinguished *Gibson*, where police had waited four days after issuance to execute a search warrant. The district court in *Gibson* denied the defendant's motion to suppress, having "concluded that the confidential informant's statements about drug trafficking activity at the [defendant's] apartment and the traffic in and out of the apartment were sufficiently indicative of continued drug dealing to provide probable cause at the time the warrant was issued." 123 F.3d at 1125. On appeal, the Eighth Circuit affirmed

the district court, noting that, "[b]ecause *continuing criminal activity* was suspected and corroborated, probable cause did not dissipate in the four days that lapsed between the time the state court issued the warrant and its execution." *Id.* (emphasis added).

[11] In contrast, in *Huffines*, we held that the probable cause supporting the search warrant had dissipated by the time of execution. In particular, we observed that

> [t]he State presented no evidence that the police conducted surveillance of Huffines' residence between the time the warrant was issued and when it was executed. The State did not present evidence regarding any increase or decrease in traffic to and from Huffines' home or any evidence indicating on-going drug activity.
>
> Utilizing the totality of the circumstances approach of the federal courts, we conclude that the State has failed to demonstrate that continuing criminal activity was suspected and corroborated. As such, probable cause dissipated in the eight days that lapsed between the time of the warrant's issuance and the search of Huffines' home. Therefore, when the police conducted the search, they did so based upon a warrant not supported by probable cause.

*Huffines*, 739 N.E.2d at 1097.[3]

[12] The totality of the circumstances underlying the search warrant for Smith's stash house are distinguishable from those in *Huffines*. In *Huffines*, officers

---

[3] As in *Huffines*, here there is no meaningful difference between our analyses under the federal and state constitutions.

conducted a single controlled buy. Here, officers conducted multiple controlled buys over the course of several months. Further, the State presented evidence that Smith had visited the stash house more than fifty times in a single month, and Smith had stopped by the stash house before the controlled buys. A second confidential informant stated that Smith and Washington used the stash house in the course of dealing drugs. And Smith spent the night at the stash house the night before officers executed the search warrant. In short, the State presented ample evidence of an ongoing drug dealing enterprise such that the search warrant was supported by probable cause at the time it was executed eight days after issuance. *See Gibson*, 123 F.3d at 1125; *see also, e.g.*, *Bigler v. State*, 602 N.E.2d 509, 516 (Ind. Ct. App. 1992) (holding information in probable cause affidavit was not stale where last known act of distribution had occurred twenty-one days before warrant issued and where facts showed ongoing drug dealing for two years), *trans. denied*. Accordingly, the trial court did not err when it admitted into evidence items seized pursuant to the search warrant.

### *Issue Two: Statement*

[13] Smith contends that the trial court erred when it admitted into evidence his statement to police. He maintains that his statement was not voluntary. Again,

because Smith alleges a constitutional violation, our review is *de novo*.[4]  *See Speers*, 999 N.E.2d at 852.

> "A waiver of one's *Miranda* rights occurs when a defendant, after being advised of those rights and acknowledging an understanding of them, proceeds to make a statement without taking advantage of those rights." *Crain v. State*, 736 N.E.2d 1223, 1230 (Ind. 2000).  The State has the burden to prove beyond a reasonable doubt that the waiver was made knowingly and voluntarily.  *Horan v. State*, 682 N.E.2d 502, 509 (Ind. 1997). To be admissible, a suspect's confession must also be voluntarily given.  *Carter v. State*, 686 N.E.2d 1254, 1258 (Ind. 1997).  A confession is voluntary if it is the product of a rational intellect and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.  *A.A. v. State*, 706 N.E.2d 259, 262 (Ind. Ct. App. 1999).  Under the United States Constitution, the State must prove by a preponderance of the evidence that the defendant's confession was voluntary.  *Clark v. State*, 808 N.E.2d 1183, 1191 (Ind. 2004).

*Palilonis v. State*, 970 N.E.2d 713, 732 (Ind. Ct. App. 2012), *trans. denied*.

[14]  Smith asserts that, during his interview, the officers both threatened him and made promises of leniency, which rendered his statement involuntary.[5]  In

---

[4]  Smith does not clearly state whether he claims a constitutional violation under the federal or state constitutions, or both.  He mentions the Fifth Amendment to the United States Constitution at one point, so we will address his claim under the federal constitution.

[5]  For the first time on appeal, Smith maintains that the location of his interview, in a police car at the IMPD gun range with guns being fired nearby, along with the tightness of the handcuffs, which the officers did not loosen until one-and-one-half hours had transpired after his arrest, also rendered his confession involuntary.  But Smith did not ask to go to a different location or express any concern about the gun range.  And Smith does not direct us to any evidence that he had expressed discomfort as a result of the handcuffs before the

support of his contention, Smith summarizes the offending statements by the officers during his interview as follows:

"[Defendant] faces a crapload of time in Federal jail."

"quite a bit of Federal time."

"you are looking at a significant amount of time."

"significant portion of your life in penitentiary"

"He'll be joining you in Federal prison."

"When I play those videos to [the] Federal jury . . . "

"You are screwed in Federal Court with your criminal history."

"We have the ability to take all the assets."

"If we go to the prosecutor and we say: "He is willing to play ball, there is a way you walk away from this."

"And another kicker that factors into that in the federal side of things on the onset right now – we would need to go over specifically your involvement within this and you need to take responsibility for it and acknowledge your participation to the point where we can say you cooperated in that way. Because actually that helps you in the federal system. You get consideration for that. They can knock points off. Everything in the federal system is on the points system."

---

officers loosened them. In any event, it is well settled that a defendant cannot make an argument for the first time on appeal. *See Taylor v. State*, 710 N.E.2d 921, 923 (Ind. 1999).

Appellant's Br. at 19-20.

It is true that a confession is inadmissible if obtained by a promise of immunity or mitigation of punishment. *Collins v. State*, 509 N.E.2d 827, 830 (Ind. 1987). However, vague and indefinite statements by the police about it being in the best interest of the defendant for him to tell the real story or cooperate with the police are not sufficient inducements to render a subsequent confession inadmissible. *Id.* Implied promises are too indefinite to render a confession involuntary. *Id.*

Here, the officers' statements to Smith that he faced a considerable amount of jail time and might get leniency for his cooperation were too vague and indefinite to render his confession involuntary. *See Higgins v. State*, 562 N.E.2d 770, 771 (Ind. Ct. App. 1990) (holding confession voluntary where officer told defendant "the one that cooperates the most" would get the "best deal" from the prosecutor); *see also, e.g.*, *Lord v. State*, 531 N.E.2d 207, 209 (Ind. 1988) (holding confession voluntary where police officer asked, "[I]f I could get [the prosecutor] down here, would you tell the truth, if he'd cut you a deal?"); *Neal v. State*, 522 N.E.2d 912, 913 (Ind. 1988) (holding confession voluntary where officer promised leniency if defendant "came clean"); *Ford v. State*, 504 N.E.2d 1012, 1013 (Ind. 1987) (holding confession voluntary where officer told defendant that others were making statements and that it would be in his best interests to make a statement himself); *Hampton v. State*, 468 N.E.2d 1077, 1080 (Ind. Ct. App. 1984) (holding confession voluntary where officers told defendant possible sentences for crime, that mitigating circumstances could be

considered, and that they would inform court if he was truthful and cooperative); *White v. State*, 404 N.E.2d 1144, 1146 (Ind. Ct. App. 1980) (holding confession voluntary where officer stated, "if you help us like your sister, we'll help you"). The trial court did not err when it found that Smith's statement was voluntary.

### Issue Three:  Cross-examination

[17] Finally, Smith contends that the trial court abused its discretion when it prohibited him from questioning Detective Hart about threats Detective Hart had allegedly made to Smith during the interview. A trial court has wide discretion to determine the scope of cross-examination, and we will reverse only for a clear abuse of that discretion. *Nasser v. State*, 646 N.E.2d 673, 681 (Ind. Ct. App. 1995). The general rule is that cross-examination must lie within the scope of the direct examination. *Id.* A trial court abuses its discretion in controlling the scope of cross-examination when the restriction relates to a matter which substantially affects the defendant's rights. *Id.*

[18] Here, Smith points out that, on direct examination of Detective Hart, the prosecutor asked him whether he had threatened Smith during the interview, and Detective Hart answered no. Smith asserts that that question and answer opened the door for Smith to question Detective Hart about alleged threats he had made. And Smith made an offer of proof where he asked Detective Hart about his statements to Smith that he faced "a crapload of Federal time" if he did not cooperate, and other statements to that effect. Tr. Vol. IV at 16.

The trial court limited Smith's cross-examination of Detective Hart based on the court's previous ruling that Detective Hart had not made threats against Smith during his interview. Indeed, again, "'[s]tatements by police expressing a desire that a suspect cooperate and explaining the crimes and penalties that are possible results are not specific enough to constitute either promises *or threats*.'" *Clark v. State*, 808 N.E.2d 1183, 1191 (Ind. 2004) (quoting *Kahlenbeck v. State*, 719 N.E.2d 1213, 1217 (Ind. 1999) (emphasis added)). Thus, as the trial court determined, Detective Hart's statements regarding possible penalties Smith faced did not constitute threats. And because there is no evidence that Detective Hart threatened Smith during the interview, Smith cannot show that the trial court abused its discretion when it prohibited Smith's questions of Detective Hart about alleged threats on cross-examination.

Affirmed.

Pyle, J., and Altice, J., concur.